DAVID CHIU, State Bar #189542
City Attorney
WAYNE SNODGRASS, State Bar #148137
Deputy City Attorney
TARA M. STEELEY, State Bar #231775
Deputy City Attorney
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:    (415) 554-4655
Facsimile:     (415) 554-4699
E-Mail:         tara.steeley@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
ROSANNA PEREZ; JONATHAN WEBB and JESSICA WALLACE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| ALEXANDER STEWART and ANDREW CONWAY, | Case No. 3:22-cv-01108-YGR |
|---|---|
| Plaintiffs, | **DEFENDANTS CITY AND COUNTY OF SAN FRANCISCO, ROSANNA PEREZ, JONATHAN WEBB AND JESSICA WALLACE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| vs. | |
| CITY AND COUNTY OF SAN FRANCISCO, CALIFORNIA, ROSANNA PEREZ, Park Ranger with San Francisco Recreation and Parks Department, JONATHAN WEBB, Park Ranger with San Francisco Recreation and Parks Department, and JESSICA WALLACE, Park Ranger with San Francisco Recreation and Parks Department, | Hearing Date:    May 24, 2022<br>Time:             2:00 p.m.<br>Place:            Judge Yvonne Gonzalez Rogers<br>                    1301 Clay Street<br>                    Courtroom 1 – 4th Floor<br>                    Oakland, CA 94612 |
| Defendants. | Trial Date:      None set. |
| | Attachments:    Declaration of Shauna Bogetz<br>                    Declaration of Tara M. Steeley<br>                    [Proposed] Order |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................1

STATEMENT OF FACTS ..............................................................................................2

    I.     SAN FRANCISCO PARK CODE SECTION 7.03 ..........................................2

    II.    PLAINTIFFS ALEXANDER STEWART AND ANDREW CONWAY .............2

ARGUMENT ..................................................................................................................4

    I.     PLAINTIFFS HAVE NOT DEMONSTRATED A LIKELIHOOD OF
            SUCCESS ON THE MERITS. ..........................................................................5

        A.    Park Code Section 7.03 Does Not Violate Plaintiffs' Right to Free
             Speech. ....................................................................................................5

             1.     San Francisco's Health Order Is Content-Neutral. ..........................5

             2.     Section 7.03 Is Narrowly Tailored To Advance Significant
                    Governmental Interests. ..................................................................8

                   a.     Regulating the Competing Uses of Public Space ...............8

                   b.     Protecting Public From Noise And Other Inconveniences 11

                   c.     San Francisco's Fee And Damage Deposit Requirements
                        Are Narrowly Tailored. ....................................................12

             3.     Section 7.03 Leaves Ample Alternative Means Of
                    Communication. ..............................................................................14

              4.     Section 7.03 Does Not Grant Overly Broad Discretion To
                    Decision-Makers. ............................................................................15

         B.    Park Code Section 7.03 Does Not Violate Plaintiffs' Free Exercise
              Rights. ..................................................................................................16

        C.    Park Code Section 7.03 Does Not Violate Due Process. ..........................17

        D.    Park Code Section 7.03 Does Not Violate Equal Protection. ...................19

    II.    PLAINTIFFS HAVE NOT SHOWN THAT THEY ARE LIKELY TO SUFFER
            IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF. ....20

    III.   THE EQUITIES AND PUBLIC INTEREST FAVOR THE CITY. ....................21

CONCLUSION ..............................................................................................................22

# TABLE OF AUTHORITIES

**Federal Cases**

*Al Otro Lado v. Wolf*
   952 F.3d 999 (9th Cir. 2020) ...................................................................................................21

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*
   483 U.S. 327 (1987)...................................................................................................................7

*Attorney General v. Irish People, Inc.*
   684 F.2d 928 (D.C.Cir.1982) ...................................................................................................19

*Baldwin v. Redwood City*
   540 F.2d 1360 (9th Cir. 1976) .................................................................................................13

*Broadrick v. Oklahoma*
   413 U.S. 601 (1973)..................................................................................................................18

*Cal. Teachers Ass'n v. State Bd. of Educ.*
   271 F.3d 1141 (9th Cir. 2001) .................................................................................................18

*City of Cleburne, Tex. v. Cleburne Living Ctr.*
   473 U.S. 432 (1985)..................................................................................................................19

*City of Los Angeles v. Lyons*
   461 U.S. 95 (1983)....................................................................................................................14

*Colacurcio v. City of Kent*
   163 F.3d 545 (9th Cir. 1998) ...................................................................................................14

*Country Classic Dairies, Inc. v. State of Montana, Dep't of Commerce Milk Control Bureau*
   847 F.2d 593 (9th Cir. 1988) ...................................................................................................19

*Cox v. State of New Hampshire*
   312 U.S. 569 (1941)...............................................................................................8, 9, 10, 11, 13

*Cuviello v. City of Vallejo*
   944 F.3d 816 (9th Cir. 2019) ...................................................................................................12

*Empl. Div., Dept. of Human Resources of Oregon v. Smith*
   494 U.S. 872 (1990)..............................................................................................................9, 16

*Fed. Trade Comm'n v. Affordable Media, LLC*
   179 F.3d 1228 (9th Cir. 1999) .................................................................................................21

*Forsyth County v. Nationalist Movement*
   505 U.S. 123 (1992)..................................................................................................................15

*Freeman v. City of Santa Ana*
   68 F.3d 1180 (9th Cir. 1995) ...................................................................................................19

*Fulton v. City of Philadelphia, Pennsylvania*
   141 S. Ct. 1868 (2021) ...................................................................................17

*Fund For Animals, Inc. v. Lujan*
   962 F.2d 1391 (9th Cir. 1992) .......................................................................21

*Grayned v. City of Rockford*
   408 U.S. 104 (1972) ...............................................................................11, 17

*Green v. City of Raleigh*
   523 F.3d 293 (4th Cir. 2008) ....................................................................10, 11

*Heffron v. Intl. Soc. for Krishna Consciousness, Inc.*
   452 U.S. 640 (1981) .................................................................................8, 11

*Hill v. Colorado*
   530 U.S. 703 (2000) ...............................................................................17, 18

*Hoffman v. U.S.*
   767 F.2d 1431 (9th Cir. 1985) .......................................................................20

*Honolulu Wkly., Inc. v. Harris*
   298 F.3d 1037 (9th Cir. 2002) .......................................................................20

*Illinois Republican Party v. Pritzker*
   973 F.3d 760 (7th Cir. 2020),
   cert. denied, 141 S. Ct. 1754 (2021) ................................................................7

*Jarecki v. G. D. Searle & Co.*
   367 U.S. 303 (1961) ......................................................................................19

*Kaahumanu v. Hawaii*
   682 F.3d 789 (9th Cir. 2012) ....................................................................13, 14

*Kuba v. 1-A Agr. Ass'n*
   387 F.3d 850 (9th Cir. 2004) ..........................................................................5

*Long Beach Area Peace Network v. City of Long Beach*
   574 F.3d 1011 (9th Cir. 2009) ....................................................................7, 8

*Lydo Enterprises, Inc. v. City of Las Vegas*
   745 F.2d 1211 (9th Cir. 1984) .......................................................................21

*Marcavage v. City of New York*
   918 F. Supp. 2d 266 (S.D.N.Y. 2013) ............................................................10

*Masterpiece Cakeshop, Ltd. v. Colorado Civ. Rights Commn.*
   138 S. Ct. 1719 (2018) ...................................................................................17

*Oakland Trib., Inc. v. Chron. Pub. Co., Inc.*
   762 F.2d 1374 (9th Cir. 1985) .......................................................................21

*Planned Parenthood of Blue Ridge v. Camblos*
  116 F.3d 707 (4th Cir. 1997) ..................................................................22

*Poulos v. State of N.H.*
  345 U.S. 395 (1953) ..............................................................................8, 9

*Reed v. Town of Gilbert, Ariz.*
  576 U.S. 155 (2015) ..............................................................................5, 7

*Rosenbaum v. City and County of San Francisco*
  484 F.3d 1142 (9th Cir. 2007) .............................................................5, 11

*S. Oregon Barter Fair v. Jackson County, Oregon*
  372 F.3d 1128 (9th Cir. 2004) ...........................................................13, 16

*Santa Monica Food Not Bombs v. City of Santa Monica*
  450 F.3d 1022 (9th Cir. 2006) ........................................................7, 10, 14

*Second City Music, Inc. v. City of Chicago*
  333 F.3d 846 (7th Cir. 2003) .................................................................21

*Thomas v. Chicago Park Dist.*
  227 F.3d 921 (7th Cir. 2000),
  aff'd, 534 U.S. 316 (2002) ....................................................................14

*Thomas v. Chicago Park Dist.*
  534 U.S. 316 (2002)......................................................................8, 9, 11, 15

*Turner Broad. System, Inc. v. F.C.C.*
  512 U.S. 622 (1994) ................................................................................6

*U.S. v. Albertini*
  472 U.S. 675 (1985) ............................................................................8, 12

*U.S. v. Baugh*
  187 F.3d 1037 (9th Cir. 1999) ..............................................................6, 8

*U.S. v. Swisher*
  811 F.3d 299 (9th Cir. 2016) .................................................................6, 7

*United States v. Aguilar*
  883 F.2d 662 (9th Cir.1989) ..................................................................20

*Ward v. Rock Against Racism*
  491 U.S. 781 (1989)........................................................................ *passim*

*Watchtower Bible & Tract Soc'y. of New York, Inc. v. Village of Stratton*
  536 U.S. 150 (2002) ...............................................................................10

*Winter v. Nat. Resources Def. Council, Inc.*
  555 U.S. 7 (2008)...................................................................4, 20, 21, 22

*Young v. American Mini Theatres, Inc.*
   427 U.S. 50 (1976)................................................................................18

**Federal Statutes**
28 U.S.C. 1746.....................................................................................5

**Constitutional Provisions**
U.S. Const.
   Amend. I ....................................................................................... *passim*
   Amend. XIV, § 1 ...............................................................................4

Cal. Cont.
   Art. I, § 2
   Art. I, § 2(a) ......................................................................................5

**San Francisco Statutes, Codes & Ordinances**
S.F. Park Code
   § 7.01 ...............................................................................2, 6, 8, 22
   § 7.03 ........................................................................................ *passim*
   § 7.03(a) .................................................................................... *passim*
   § 7.03(b) .................................................................................... *passim*
   § 7.03(c) ..............................................................................................7
   § 7.03(e) ..............................................................................................2
   § 7.03(f) ...............................................................................................6
   § 7.03(h) .................................................................................... *passim*
   § 7.03(i) .............................................................................1, 2, 6, 7, 18
   § 7.03(j) ...........................................................................2, 6, 7, 9, 17
   § 7.03(m) .................................................................................1, 2, 6
   § 7.03(n) ..............................................................................................2
   § 7.03(o) ..............................................................................................2
   § 7.03(p) ........................................................................................2, 6
   § 7.03(q) ........................................................................................2, 6
   § 7.03(t) ............................................................................1, 2, 12, 18, 19
   § 7.04 ...............................................................................................15
   § 7.06(d) ...........................................................................................13
   § 7.07 ...............................................................................................15
   § 7.07(a) ...........................................................................................16

**Other References**
Musical Performance.  The Free Dictionary, Farlex,
   https://www.thefreedictionary.com/musical+performance, last accessed Apr. 12, 2022..........18

Structure.  Dictionary.com,
   https://www.dictionary.com/browse/structure, last accessed Apr. 12, 2022. ...........................19

# INTRODUCTION

Plaintiffs' motion is based on a misunderstanding of San Francisco's permitting requirements. The gravamen of Plaintiffs' motion is their assertion that San Francisco has singled out religious events for more stringent permitting requirements, but that is simply false.  San Francisco imposes the same permitting requirements on religious events as it does on other expressive activities, including parades, demonstrations and leafletting events.  For all of those expressive activities, permits are required only where the event involves: (1) large groups of 50 people or more; (2) amplified sound; or (3) tables, stages, bandstands and the like.  S.F. Park Code § 7.03(a), (b), (h), (i), (m), (t).  No type of event is treated more favorably than religious events under San Francisco's permitting requirements. For that reason, Plaintiffs' free speech, free exercise of religion, and equal protection claims all fail. Plaintiffs fare no better with their due process claim.  Plaintiffs assert that Park Code Section 7.03 is impermissibly vague with respect to the phrases "musical performance" and "other structures," but Plaintiffs do not even explain—let alone demonstrate—why those phrases cannot be understood by the public.

Plaintiffs' motion also fails because Plaintiffs failed to come forward with any evidence demonstrating irreparable harm, or that public interest favors an injunction.  Plaintiffs do not claim that San Francisco's permitting requirements have prevented them from worshipping together on Sunday mornings.  In fact, they specifically allege to the contrary.  Complaint ("Comp.") ¶ 30. Plaintiffs appear to rely solely on their assertion that violations of the Constitution cause irreparable harm, but Plaintiffs have not demonstrated any violation of the Constitution.

While Plaintiffs have not shown that they will face any harm without an injunction, San Francisco and the public would face grave harm if the Court enjoins Park Code Section 7.03.  Without Section 7.03's permitting requirements, San Francisco would face the confusion and disorder caused by large groups of people attempting to use the same space at the same time.  San Francisco also would be unable to protect the public from excessive amplified sound and hazardous structures, which could cause injury, property damage, and inconvenience to park users.

The City respectfully requests that the Court deny Plaintiffs' motion for a preliminary injunction.

**STATEMENT OF FACTS**

**I.    SAN FRANCISCO PARK CODE SECTION 7.03**

The City requires permits for various activities in its parks to regulate the competing uses of public space, protect public safety and property, protect the City from liability, and preserve the ability of all San Franciscans to gather, recreate and otherwise enjoy the parks.  S.F. Park Code § 7.01.  Under Park Code Section 7.03, expressive activities—such as parades, demonstrations, protests, and religious events—require a permit if the event involves a large gathering of 50 or more persons.  *Id.* § 7.03(a), (b), (h).  Social gatherings require a permit when they involve 25 or more persons.  *Id.* § 7.03(j).  Other types of events, including weddings, art shows, and animal shows, require permits regardless of the number of attendees.  *Id.* § 7.03(e), (n), (o), (p), (q).  Permits are also required for amplified sound so that the City can facilitate the event, while preserving the quiet enjoyment of parks for other users, avoiding inconvenience to neighbors, and minimizing the conflicts between park users that often arise from loud noise in the parks.  *Id.* § 7.03(i), (m); Bogetz Dec. ¶¶ 2, 6, 19.  A permit is also required when a person wishes to "[s]tation or erect any table, scaffold, stage, platform, tower, stand, bandstand, building, fence, wall, monument, dome or other structure" in a park to protect public safety, park property and the free-flow of pedestrian/vehicle traffic.  *Id.* § 7.03(t); Bogetz Dec. ¶ 7.

**II.    PLAINTIFFS ALEXANDER STEWART AND ANDREW CONWAY**

Plaintiffs Stewart and Conway allege that they are evangelical Christians associated with Christ's Forgiveness Ministries San Francisco Church and they wish to hold religious services in San Francisco's parks.  Comp. ¶¶ 16-18, 31, 33-34.  A typical service has 50 or more people and uses amplified sound equipment for musical performances (consisting of singing and playing musical instruments) and for speeches.  *Id.* ¶¶ 36, 38, 144.  In addition, Plaintiffs set up a table during their event.  *Id.* ¶ 40.  Accordingly, it is undisputed that Plaintiffs' event requires a permit under Section 7.03.  Comp. ¶¶ 144, 161.

Although they were advised of the permit requirement in a letter from the City Attorney's Office dated January 14, 2021, Plaintiffs nonetheless continued to hold events in San Francisco's parks without a permit.  Bogetz Dec. ¶¶ 11-12, Ex. A; Comp. ¶¶ 41-140.  In response to complaints from the public about the excessive noise and the disruption caused by Plaintiffs' unpermitted events,

the City issued citations to Plaintiffs for violating Section 7.03 on January 24, 2021, February 7, 2021, February 21, 2021, and March 21, 2021.  Comp. ¶¶ 41-50, 59, 65, 70, 90, 101, 112, 132, 135, 138.

After receiving the citation in March, Plaintiffs allege that Plaintiff Conway explored obtaining a permit.  Comp. ¶ 141.  On March 22, 2021, Conway completed a permit application, but misrepresented his worship service as a "political protest" because he hoped (incorrectly) that misrepresenting his event would allow him to avoid permitting requirements.  Comp. ¶ 146; S.F. Park Code § 7.03(b).  Conway's application requested U.N. Plaza as a first-choice location and McLaren Park as a second-choice location for his event.  *Id.* ¶ 145; Bogetz Dec. ¶ 13, Ex. B.  The next day, Shauna Bogetz, Supervisor of Special Events from the City's Recreation and Parks Department ("Rec Park"), wrote to Mr. Conway.  She explained that U.N. Plaza was already reserved for a farmer's market and was not a large enough venue to accommodate Plaintiffs' event at the same time.  Comp. ¶ 148; Bogetz Dec. ¶ 14, Ex. B.  However, she told him that space was available at McLaren Park, Plaintiffs' second choice location, in a lawn area that provides ample space for Plaintiffs' gathering and has parking nearby.  Bogetz Dec. ¶ 14, Ex. B-C.  She explained that the Department was only issuing permits for three weeks out, and she would hold the space for the next three weeks (on Sunday March 28, 2021, April 4, 2021 and April 11, 2021) if Mr. Conway wished to proceed with a permit.  *Id.*  In response to Ms. Bogetz's email, Mr. Conway responded that he would like to "proceed with a permit at the McLaren Park location."  *Id.* ¶ 15, Ex. D.  He did not express that the location Ms. Bogetz's offered was undesirable or request a different location.  *Id.*

After Mr. Conway confirmed that he would like to obtain a permit, Stacey CatAylo, another Rec Park employee, worked with Mr. Conway to finalize the permit.  Ms. Cataylo explained that the permit fee was $39 for each date, plus a $250 refundable deposit to cover any risk of damage.  In addition, she explained that Mr. Conway would need to comply with the COVID-19 Health Orders that were in place at that time.  Bogetz Dec. ¶¶ 16-17.  Finally, she explained that Rec Park "typically" requires a certificate of insurance, and therefore she requested that Mr. Conway share certain information with his organization's insurance carrier "if [he has] an organization with an existing liability insurance."  *Id.* ¶ 18.  She did not require Mr. Conway to obtain insurance if he did not already have insurance.  *Id.*

On March 26, 2021, Mr. Conway withdrew his permit application.  Bogetz Dec. ¶ 20; Comp. ¶ 157.  Although Plaintiffs have not obtained permits to use San Francisco parks, Plaintiffs nonetheless continue to "gather every week on Sunday morning for worship . . ."  Comp. ¶ 30.  Plaintiffs found different locations in San Francisco for their worship services, and appear to now hold their Sunday morning service indoors.  Steeley Dec. Exs. B, E, G.

Nearly a year after withdrawing the permit application, Plaintiffs filed this lawsuit.  In their First Cause of Action, Plaintiffs allege that the permitting requirements in Park Code Section 7.03 violate the First Amendment by restraining Plaintiffs "from engaging in expressive activities."  Comp. ¶ 179.  In their Second Cause of Action, Plaintiffs allege that Section 7.03 is unconstitutionally vague in violation of the Due Process Clause and vests park authorities with unbridled discretion to grant, deny, modify, or revoke permits.  *Id.* ¶¶ 185-87.  In their Third Cause of Action, Plaintiffs allege that Section 7.03 impermissibly burdens their free exercise of religion by requiring Plaintiffs to obtain a permit.  *Id.* ¶¶ 193-95.  In their Fourth Cause of Action, Plaintiffs allege a violation of the Equal Protection Clause because the City's enforcement of Section 7.03 allegedly discriminates against Plaintiffs in comparison to unspecified "similarly-situated individuals."  *Id.* ¶ 198.  In their Fifth Cause of Action, Plaintiffs allege that Section 7.03 violates their right to assemble by limiting their "ability to gather together and engage in worship with others associated with" their church.  *Id.* ¶ 204.  In their Sixth Cause of Action, Plaintiffs allege that Section 7.03 violates the Liberty of Speech Clause of the California Constitution.  *Id.* ¶ 211.  Plaintiffs seek declaratory and injunctive relief declaring Section 7.03 unconstitutional on its face and as applied, and barring its enforcement.  Plaintiffs also seek compensatory damages, nominal damages, attorneys' fees and costs.

## ARGUMENT

"Injunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Id.*  Here, Plaintiffs have

not satisfied their burden on any of the *Winter* factors.  Plaintiffs have not even offered any evidence supporting their motion.[1]  Accordingly, Plaintiffs' motion should be denied.

## I.   PLAINTIFFS HAVE NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS.

### A.   Park Code Section 7.03 Does Not Violate Plaintiffs' Right to Free Speech.

Plaintiffs' Free Speech claim fails because Section 7.03's permit requirements are reasonable time, place and manner restrictions.  Plaintiffs note correctly that parks are traditional public fora for expression.  However, "even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information."  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (internal quotations omitted).[2]  Each of those requirements is easily satisfied here.

### 1.   San Francisco's Health Order Is Content-Neutral.

Section 7.03 is content-neutral.  "Government regulation of speech is content-based if a law applies to particular speech because of the topic discussed or the idea or message expressed."  *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).  "This commonsense meaning of the phrase 'content-based' requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys."  *Id.*  "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some

---

[1] Plaintiffs rely on the allegations of their own complaint, but that complaint is not verified under penalty of perjury under the laws of the United States.  Therefore, it is not evidence.  *See* 28 U.S.C. 1746.  Likewise, Plaintiffs attached documents to their Notice of Motion and Motion for Preliminary Injunction, but failed to attach a declaration authenticating those documents.

[2] Plaintiffs invoke Article 1, section 2(a) of the California Constitution, which guarantees that "[e]very person may freely speak, write and publish his or her sentiments on all subjects." Cal. Const. art. I, § 2(a).  Plaintiffs note that the California Constitution in some contexts is more protective than the federal constitution, but there are no differences between the California Constitution and United States Constitution that are relevant in this case.  As the Ninth Circuit has already explained, the California Constitution "tolerates content-neutral speech restriction commensurate with the First Amendment."  *Rosenbaum v. City and County of San Francisco*, 484 F.3d 1142, 1167 (9th Cir. 2007).  Indeed, because "California's 'formulation of the time, place, and manner test was fashioned from a long line of United States Supreme Court cases," courts apply "federal time, place and manner standards" to claims brought under the California Constitution.  *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 857–58 (9th Cir. 2004) (internal quotations and citations omitted).

speakers or messages but not others." *Ward*, 491 U.S. at 791.  Likewise, "[i]f the purpose of a law regulating conduct is aimed at the conduct itself, rather than at the message conveyed by that conduct, the regulation is subject to the lesser scrutiny given to content-neutral restrictions." *U.S. v. Swisher*, 811 F.3d 299, 312 (9th Cir. 2016).

Here, Section 7.03 is content-neutral because it requires permits based on the type of event, number of people, and the conduct involved—not the content of expression.  Section 7.03 requires a permit for amplified sound regardless of the content of the sound that is amplified or any message it conveys.  S.F. Park Code § 7.03(i), (m).  Likewise, Section 7.03 requires permits for various types of social events, including weddings, festivals, and all social gatherings involving 25 or more persons. *Id.* § 7.03(j), (p), (q).  With respect to expressive activity, Section 7.03 is *less restrictive* and only requires permits for events involving 50 or more persons.  Specifically, Section 7.03 requires a permit where a person conducts or sponsors a parade, demonstration, leafletting event, soliciting event, or religious event involving 50 or more persons. S.F. Park Code § 7.03(a), (b), & (h).  The City imposes those permit requirements to regulate the competing uses of public space and to preserve parks as locations for all San Franciscans to enjoy, while also providing locations for expressive activities.  S.F. Park Code § 7.01; Bogetz Dec. ¶¶ 2, 6, 7.  None of San Francisco's concerns stem from the content of Plaintiffs' (or anyone else's) communication.  *Id.*; *U.S. v. Baugh,* 187 F.3d 1037, 1043 (9th Cir. 1999) (holding that a law was content-neutral where the government's concerns "did not stem from the underlying content" of the speaker's message).

Plaintiffs assert that Section 7.03 is content-based, but their arguments are based on a misreading of Supreme Court and Ninth Circuit precedent.  Plaintiffs assert that Section 7.03 is content-based because it requires permits for parades, demonstrations, leafletting or soliciting events, and performances in Section 7.03(a)-(f), but those are not content-based requirements.  Section 7.03's permit requirements apply to parades, demonstrations, leafletting events, solicitation events, and performances *regardless of any message or ideas expressed.  Turner Broad. System, Inc. v. F.C.C.*, 512 U.S. 622, 643 (1994) ("[L]aws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content-neutral.")  Section 7.03 permit requirements are based on the *conduct* at issue (*i.e.,* hosting a parade, demonstration or similar large

event)—not the *content* of any communications at those events.  Therefore, Section 7.03 is content-neutral.  *Swisher*, 811 F.3d at 312; *A.C.L.U. of Nevada v. City of Las Vegas*, 466 F.3d 784, 794 (9th Cir. 2006) (explaining that "courts have held that bans on the act of solicitation are content-neutral").

Plaintiffs' argument that Section 7.03(h) is content-based is based on a misreading of Section 7.03.  Section 7.03 does not single out religious events for more stringent permitting requirements, as Plaintiffs claim.  To the contrary, Section 7.03 imposes the same permitting requirements on religious events as it does on parades, demonstrations and other types of expressive activity.  *Id.* § 7.03(a), (b), (h).  Plaintiffs assert that groups of 50 or more people can gather socially "freely without the necessity of a permit" while a permit is required for religious events of the same size, but that is simply wrong.  MPA at 17.  Section 7.03(j) requires permits for all social gatherings of 25 or more persons.  S.F. Park Code § 7.03(j).  Thus, to take Plaintiffs' example, 50 or more people gathering in a park to read a book certainly need a permit under Section 7.03, regardless of whether that book is a novel or the Bible.  *Id.* § 7.03(h), (j); MPA at 17; Bogetz Dec. ¶ 4.

To be sure, Section 7.03 treats expressive activity (including religious events) *more favorably* than social events, because expressive activities only require a permit for groups of 50 or more people while social gatherings require permits for groups of 25 or more people.  *Id.* § 7.03(a)-(c), (i), (j).  But providing a *preference* for expressive activities (including religious events) is permissible, and does not make Section 7.03 content-based.  *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1027–28 (9th Cir. 2009) (holding that "distinctions between expressive activities and non-expressive activities are permissible;" rejecting argument that permit requirements that treat "expressive activity more favorably than non-expressive activity are impermissibly content-based"); *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1037 (9th Cir. 2006) (rejecting argument that permit requirement is content-based where "it treats expressive events more favorably than others"); *see also Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos,* 483 U.S. 327, 334 (1987) (holding government does not violate the First Amendment when it accommodates religious practice); *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 764, 769–70 (7th Cir. 2020), cert. denied, 141 S. Ct. 1754 (2021) (rejecting argument that "preferential treatment for religious exercise conflicts with the interpretation in *Reed v. Gilbert* of the Free Speech

Clause.")  Rather than violating the First Amendment, "the permissive nature of the [exceptions favoring expressive activity] furthers, rather than constricts, free speech."  *Long Beach Area Peace Network*, 574 F.3d at 1028 (quoting *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 325 (2002)).

### 2. Section 7.03 Is Narrowly Tailored To Advance Significant Governmental Interests.

Section 7.03 is also narrowly tailored to serve a significant governmental interest.  For a time, place and manner restriction, "[a] narrowly tailored requirement need not be the least restrictive means of furthering the [government's] interests, but the restriction may not burden substantially more speech than necessary to further the interests."  *U.S. v. Baugh,* 187 F.3d 1037, 1043 (9th Cir. 1999).  An incidental burden on speech is permissible under the First Amendment "so long as the neutral regulation promotes a substantial government interest that would be achieved less effectively absent the regulation."  *U.S. v. Albertini,* 472 U.S. 675, 688–89 (1985).

Here, Section 7.03 is narrowly tailored to advance numerous significant governmental interests, including San Francisco's need to regulate the competing uses of public spaces, to reduce noise and other inconveniences to park users and nearby residents, to avoid harm to public safety or park property, and to protect the City from liability.  S.F. Park Code § 7.01.

#### a. Regulating the Competing Uses of Public Space

San Francisco has a significant interest in regulating the competing uses of public property.  *Cox v. State of New Hampshire*, 312 U.S. 569, 576 (1941).  While recognizing that well-established principle, Plaintiffs nonetheless complain that they could not use U.N. Plaza because it was already reserved for another event and were instead offered their second choice location.  MPA at 17, 20; Bogetz Dec. ¶ 14; Ex. B.  Plaintiffs assert that "speakers themselves are best suited to determine what areas are appropriate for their expressive purposes," but a speaker's desire to use a particular space cannot overcome prior reservations and other competing uses by the public.  MPA at 17.  Indeed, it is well established that "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired."  *Heffron v. Intl. Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981); *see also Poulos v. State of N.H.*, 345 U.S. 395, 405 (1953) ("The principles of First Amendment are not to be treated as a promise that everyone with

opinions or beliefs to express may gather around him at any public place and at any time a group for discussion or instruction.")

Plaintiffs also cannot reasonably dispute that San Francisco's permitting requirement is narrowly tailored to advance the City's significant interest in regulating the competing uses of public space. San Francisco could not regulate the competing uses of public space without requiring people holding large events to notify the City of their plans and obtain a permit. *Thomas*, 534 U.S. at 324 (upholding permit requirement for groups of 50 people or more). Without that requirement, San Francisco would likely face the confusion and disorder caused by large groups of people attempting to use the same space at the same time. *Cox*, 312 U.S. at 576; Bogetz Dec. ¶ 9. Plaintiffs do not dispute that basic fact. Instead, Plaintiffs argue that permits are not "especially needed for events that happen to be religious in nature," MPA at 18, but that argument is based on a misunderstanding of Section 7.03's requirements. Section 7.03 *does not impose different requirements on religious events*, but instead treats religious events like other types of expressive activity. Bogetz Dec. ¶¶ 3-5. As explained above, Section 7.03 requires organizers of expressive activities—including parades, demonstrations, and religious events—to obtain permits where the event involves 50 or more people. S.F. Park Code § 7.03(a), (b), (h).[3] There is nothing impermissible about requiring religious groups to obtain permits on the same terms as other types of expressive activity. *Poulos*, 345 U.S. at 405 (upholding permit requirement for worship service in park).

Switching gears, Plaintiffs assert that San Francisco's permitting requirement imposes a burden on their "religious scruples," MPA at 18, but Plaintiffs do not offer any evidence to show that their religion prevents them from obtaining a permit. In any event, Plaintiffs' religious beliefs do not entitle them to relief from neutral, generally applicable permitting requirements. *Empl. Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 879 (1990); S.F. Park Code § 7.03(a), (b), & (h). All events in San Francisco parks with 50 people or more require a permit. Bogetz Dec. ¶ 4; S.F. Park Code § 7.03. Plaintiffs' events are not entitled to different treatment.

---

[3] That permitting requirement is less restrictive than the permitting requirement that applies to other social events. Id. § 7.03(j).

Plaintiffs also have not demonstrated any burden to their right to anonymous speech.  Plaintiffs cite *Watchtower Bible & Tract Soc'y. of New York, Inc. v. Village of Stratton*, 536 U.S. 150 (2002), but that case is easily distinguishable.  *Watchtower* concerns the rights of individuals to speak anonymously when they go door-to-door on private property to advocate for a cause.  *Watchtower*, 536 U.S. at 166-67.  Unlike the door-to-door solicitation ordinance at issue in *Watchtower* which required permit holders to display their names in connection with face-to-face encounters, Section 7.03 does not require "face-to-face" identification at the moment of public speech, nor the identification of each individual engaged in speech.  *Green v. City of Raleigh*, 523 F.3d 293, 302 (4th Cir. 2008) (rejecting argument that right to anonymous speech under *Watchtower* rendered permitting requirement unconstitutional).  Further, Section 7.03's application process is "closely tied to the pragmatic necessities of regulating demonstrations" and other gatherings in parks.  *Id.*  Having to apply for a permit and providing a person's name, contact information, and details of the proposed event "impose a very modest burden" on any right to "remain anonymous and are narrowly tailored to serve [San Francisco's] significant governmental interests."  *Id.*; *see also Marcavage v. City of New York*, 918 F. Supp. 2d 266, 273 (S.D.N.Y. 2013) (holding requirement to obtain permit did not impermissibly burden right to anonymous speech under *Watchtower*).  Indeed, San Francisco must obtain contact information from permit applicants so that the applicant can be notified as to whether and when the application is approved or disproved, the City can save space for a particular applicant, and the City can communicate with the applicant about the event if needed.  Bogetz Dec. ¶ 10.[4] Likewise, San Francisco must obtain information about the event so that it can properly evaluate the application, regulate competing desires to use the space, and determine whether any additional security or other measures are needed.  *Id.*; *Cox,* 312 U.S. at 575–76 (explaining permitting requirement prevents confusion from overlapping events and gives "public authorities notice in advance so as to afford opportunity for proper policing"); *Santa Monica Food Not Bombs*, 450 F.3d at 1042 (explaining that permitting requirements for large groups allow government to "regulate competing uses and

---

[4] Plaintiffs also assert that "forcing individuals to reveal the group with whom they are associating wrongly suppresses speech and association," but Plaintiffs offer no evidence to show San Francisco has done so.  Indeed, Plaintiff Conway completed a permit application without identifying any organization or group.  Bogetz Dec. Ex. B.

provide notice to the municipality of the need for additional public safety and other services").  Thus, the information requested in the permit application is necessary for San Francisco's permitting scheme and serves valid governmental interests.  *Green*, 523 F.3d at 302; *Marcavage*, 918 F. Supp. 2d at 273.

In short, while the Supreme Court in *Watchtower* upheld the rights of individuals and small groups to engage in discourse with other individuals on private property anonymously, nothing in *Watchtower* undermines the well-established principle that cities can impose permitting requirements on large gatherings in public parks.  *Cox*, 312 U.S. at 576; *Thomas*, 534 U.S. at 324.

**b.     Protecting Public From Noise And Other Inconveniences**

Plaintiffs assert that the First Amendment does not allow San Francisco to reduce noise or other inconveniences to the public, but that is plainly incorrect.  Protecting the public from inconvenience is a significant governmental interest.  "Regulations of the use of a public forum that ensure the safety and convenience of the people are not 'inconsistent with civil liberties but ... [are] one of the means of safeguarding the good order upon which [civil liberties] ultimately depend.'" *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 323 (2002) (quoting *Cox*, 312 U.S. at 574 (1941); *see also Heffron v. Int'l Soc'y of Krishna Consciousness, Inc.,* 452 U.S. 640, 650 (1981) (holding a "State's interest in protecting the 'safety and convenience' of persons using a public forum" is assuredly "a valid government objective.")  Likewise, controlling noise that burdens other park users or nearby residents is a significant governmental interest.  *Ward*, 491 U.S. at 796 (holding "it can no longer be doubted that government 'ha[s] a substantial interest in protecting its citizens from unwelcome noise.'"); *Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972) ("If overamplified loudspeakers assault the citizenry, government may turn them down.").

The amplified sound permit requirement furthers San Francisco's significant governmental interest in regulating noise and other inconveniences to the public.  *Rosenbaum v. City & County of San Francisco*, 484 F.3d 1142, 1160 (9th Cir. 2007) (upholding requirement that religious speaker obtain an amplified sound permit).  Indeed, the permitting requirement allows the City to work with the event organizer to set time, location, and sound volume limits that are appropriate to their event, while minimizing the burden on other members of the public.  Bogetz Dec. ¶¶ 6, 9.  The importance of San Francisco's permitting requirement is well demonstrated by the facts of this case, where the City

received complaints from the public about the excessive noise at Plaintiffs' unpermitted events and the burden Plaintiffs' events caused to other park users.  Comp. ¶ 65.

Plaintiffs note that sound amplification permitting requirements can be overbroad, such as when they require permits for "any use of a sound-amplifying device at any volume by any person at any location" throughout an entire city, *see Cuviello v. City of Vallejo*, 944 F.3d 816, 830 (9th Cir. 2019), but Section 7.03 does not sweep so broadly.  Section 7.03 requires permits only for amplified sound in San Francisco's parks where the City has a significant interest in protecting the peaceful and quiet enjoyment of all park users and nearby residential areas.  *Ward*, 491 U.S. at 792 (upholding sound-amplification restriction designed to control notice, retain the character of the park and its "more sedate activities," and avoid undue intrusion into residential areas and other areas of the park).  Plaintiffs offer no argument or evidence to show that San Francisco's amplified sound permit requirement sweeps too broadly or fails to promote "a substantial government interest that would be achieved less effectively absent the regulation." *Albertini,* 472 U.S. at 688–89.

Finally, Plaintiffs assert that San Francisco cannot require a permit where a person "station[s] or erect[s] any table, scaffold, stage, platform, rostrum, tower, stand, bandstand, building, fence, wall, monument, dome or other structure."  S.F. Park Code § 7.03(t).  Plaintiffs are mistaken.  Tables, platforms and other fixed objects in a park often interfere with the flow of pedestrian and vehicle traffic, damage park landscaping, and otherwise cause harm in a park.  Bogetz Dec. ¶ 7.  Therefore, San Francisco requires a permit so that San Francisco can work with the permittee to find a suitable location for their event that will minimize those harms.  *Id.*  As explained herein, reducing inconvenience to the public and protecting park property are certainly valid governmental interests, and Section 7.03(t)  furthers those interests.  *Id.*; *Albertini,* 472 U.S. at 688–89.  Plaintiffs offer no evidence or argument to the contrary.

### c.    San Francisco's Fee And Damage Deposit Requirements Are Narrowly Tailored.

Finally, Plaintiffs note that obtaining permits *can be* burdensome, but Plaintiffs do not identify anything burdensome about Section 7.03's requirements.  Plaintiffs object that San Francisco sought to charge them a $39 permit fee, but that fee simply offsets a fraction of San Francisco's administrative

costs and is constitutional.  *Cox*, 312 U.S. at 577 ("There is nothing contrary to the Constitution in the charge of a fee" to cover administrative and other costs related to the permit); *S. Oregon Barter Fair v. Jackson County, Oregon*, 372 F.3d 1128, 1139 (9th Cir. 2004) (holding governments may "impose a permit fee that is reasonably related to legitimate content-neutral considerations, such as the cost of administering the ordinance, the cost of public services for an event of a particular size, or the cost of special facilities required for the event."); Bogetz Dec. ¶ 16.

Plaintiffs cite *Baldwin v. Redwood City*, 540 F.2d 1360, 1371 (9th Cir. 1976), but *Baldwin* is easily distinguishable.  In *Baldwin*, the Ninth Circuit struck down a fee charged for each sign used in a political campaign because the fee was so burdensome that it would "inhibit the use of this means of communication," and the fee was so arbitrary that it was not "reimbursement for the cost of inspection but an unconstitutional tax upon the exercise of First Amendment rights."  *Id.* at 1371.  No such facts are presented here.  To the contrary, the undisputed evidence demonstrates that fee at issue in this case is related to San Francisco's costs and is not so burdensome that it prohibits expression.  Bogetz Dec. ¶¶ 5, 16.

Plaintiffs also assert that San Francisco cannot charge a refundable deposit of $250 to pay for any damage to San Francisco property, but that is incorrect.  The refundable deposit advances San Francisco's significant interests in avoiding damage to park property, and in obtaining compensation for any harm that occurs.  If no damage occurs, the money is returned.  Bogetz Dec. ¶ 16.  However, if the permittee does damage park property, it is reasonable—and constitutional—to require the permittee to pay for that harm.  *Kaahumanu v. Hawaii*, 682 F.3d 789, 809 (9th Cir. 2012).  Plaintiffs offer no evidence to suggest that the deposit requirement poses an unreasonable burden on Plaintiffs.

Likewise, Plaintiffs' arguments concerning insurance are misplaced.  Plaintiffs assert that insurance requirements can prevent speech, but the Park Code already provides that a permit applicant is not required to obtain insurance for an event protected by the First Amendment if the "applicant produces evidence that complying with [an insurance requirement] is impossible or so financially burdensome that it would preclude the applicant from using park property for the proposed activity." S.F. Park Code § 7.06(d).  Plaintiffs do not offer any evidence to show that they attempted to qualify for that exemption.  Plaintiffs do not even show that they were required to obtain insurance to receive

a permit.[5]  In any event, insurance requirements are permissible time, place and manner restrictions because they protect the government from liability from injuries or property damage caused by the event.  *Kaahumanu*, 682 F.3d at 809 (upholding insurance requirement for permit because insurance and indemnification requirements serve significant governmental interests); *Santa Monica Food Not Bombs v. City of Santa Monica,* 450 F.3d 1022, 1056 (9th Cir. 2006) (explaining insurance requirement applied to expressive activity was content and viewpoint neutral, and did not violate First Amendment); *Thomas v. Chicago Park Dist*., 227 F.3d 921, 925 (7th Cir. 2000), aff'd, 534 U.S. 316 (2002) (upholding insurance requirement in park for gatherings of 50 people or more).

Finally, Plaintiffs complain about the burden of complying with a health and safety plan during a global pandemic.  MPA at 18.  At the time Plaintiffs sought a permit, San Francisco's Health Officer imposed social distancing, masking, contact tracing, and other public safety requirements designed to reduce the spread of COVID-19 and protect public health.  Bogetz Dec. ¶ 17.  Plaintiffs offer no authority for proposition that governments cannot impose safety requirements on gatherings during a pandemic.  In any event, no COVID-19 precautions are required any longer for events such as Plaintiffs', and therefore Plaintiffs' challenge to those past requirements is not justiciable.  *Id.*; *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).  Plaintiffs cannot obtain an injunction against requirements that no longer exist.  *Id.*

### 3.     Section 7.03 Leaves Ample Alternative Means Of Communication.

Section 7.03 allows ample alternative means of communication.  "The Supreme Court generally will not strike down governmental action for failure to leave open ample alternative channels of communication unless the government enactment will foreclose an entire medium of public expression across the landscape of a particular community or setting." *Colacurcio v. City of Kent*, 163 F.3d 545, 555 (9th Cir. 1998).

Here, San Francisco's permit requirement does not foreclose any medium of public expression or close any channels of communication.  Plaintiffs are free to worship at countless locations

---

[5] San Francisco did not require Plaintiffs to obtain insurance.  Bogetz Dec. ¶ 18.  Instead, the City asked Plaintiffs to share information with their insurance provider "if you have an organization with existing liability insurance."  *Id.* ¶ 18, Ex. D.

throughout the City.  *Ward*, 491 U.S. at 802 (holding ample alternative channels element is easily satisfied where time, place and manner requirement does not "attempt to ban any particular manner or type of expression at a given place or time.")  Indeed, Plaintiffs' own Facebook page demonstrates that Plaintiffs have gathered for worship at numerous San Francisco locations, including beaches, playgrounds, plazas, and indoor spaces.  Steeley Dec. Exs. A-G.  Plaintiffs are also free to worship in public parks as well—they simply must obtain a permit before doing so.  Plaintiffs assert that "every door was closed to them," but that is plainly incorrect.  San Francisco never closed any doors and never denied Plaintiffs a permit.  Bogetz Dec. ¶ 23.  Various groups (including religious groups) regularly obtain permits for use of San Francisco parks, and the City's permit officers facilitate those events by reserving space and providing services needed for the events.  *Id.* ¶ 5.  Plaintiffs, however, elected not to obtain the permit San Francisco offered, and found different locations in San Francisco to worship instead.  *Id.* ¶¶ 20, 22; Steeley Dec. Ex. B, E, G.   Plaintiffs' choice does not show a lack of alternative channels of communication.  *Ward*, 491 U.S. at 802.

### 4. Section 7.03 Does Not Grant Overly Broad Discretion To Decision-Makers.

Plaintiffs also cannot show that the Park Code grants overly broad discretion to enforcement officers.  Of course, permitting requirements must "contain adequate standards to guide the official's decision and render it subject to effective judicial review."  *Thomas*, 534 U.S. at 323.  But Plaintiffs offer nothing to show that the Park Code violates that principle.  The Park Code specifically lists the conduct that requires a permit, and states that permits will be granted unless certain objective conditions exist.  S.F. Park Code §§ 7.03, 7.04, 7.07.  The activities that require a permit—and the grounds for denial of a permit—are "reasonably specific and objective, and do not leave the decision 'to the whim of the administrator.'"  *Id.* at 324 (quoting *Forsyth County*, 505 U.S., at 133.)

Plaintiffs do not argue otherwise.  Instead, they assert that it was "arbitrary" for park officials to not grant Plaintiffs a permit to use U.N. Plaza, and to offer them their second-choice location (McLaren Park) instead.  MPA at 20.  Plaintiffs assert that "[t]he park official presumed to know where Stewart and Conway could best conduct their worship service," but that is plainly incorrect.  *Id.* As Ms. Bogetz explained to Mr. Conway, U.N. Plaza was already reserved for another event, and the Plaza is "not large enough to accommodate another group while adhering to social distancing

requirements." Bogetz Dec. ¶ 14; Ex. B; *see also* S.F. Park Code § 7.07(a) (allowing permits to be denied where "[a] prior application for a permit to use the same location at the same time has been received and such application has been or will be approved authorizing an activity which does not reasonably permit multiple occupancy of the area."). Therefore, Ms. Bogetz offered Plaintiffs an attractive lawn area in McLaren Park that has parking nearby and "provides ample space" for Plaintiffs' group. Bogetz Dec. ¶ 14, Ex. B-C. Plaintiffs complain that they were offered an "undesirable" location in McLaren Park, but Plaintiffs do not explain why the location Ms. Bogetz offered was undesirable or inadequate for their needs. Nor do Plaintiffs offer any evidence to show that they requested a different location but were denied that request. To the contrary, Plaintiffs' permit application stated that their second-choice location was McLaren Park without any further description. Bogetz Dec. Ex. B. When Ms. Bogetz offered the lawn area, Plaintiff Conway responded that he wished to proceed with a permit at the "McLaren Park location" that Bogetz offered. *Id.* ¶ 15, Ex. D. Plaintiffs never requested a different location in McLaren Park. *Id.*

Likewise, Plaintiffs object that park officials warned them that excessive noise can require San Francisco to assign a park ranger to staff the event at Plaintiffs' expense. When amplified sound is so loud that it carries beyond a permitted area, San Francisco requires security to reduce conflicts between park users and protect public safety. Bogetz Dec. ¶ 19. There is nothing unconstitutional about requiring Plaintiffs to pay for the costs of public services and security required to facilitate their event. *S. Oregon Barter Fair*, 372 F.3d at 1139 (explaining that permittees can be charged fees reasonably related to the "cost of public services" required by their event). In any event, Plaintiffs have not shown that it would be burdensome to keep the volume of their amplified sound to a level that is sufficient for their group but that would not burden other park users in surrounding areas. MPA at 20; Bogetz Dec. ¶ 19.

### B.     Park Code Section 7.03 Does Not Violate Plaintiffs' Free Exercise Rights.

Plaintiffs' Free Exercise claim is based on a misunderstanding of Section 7.03. Plaintiffs admit, as they must, that San Francisco may impose neutral, generally applicable permitting requirements on religious groups without offending the Constitution. *Empl. Div., Dept. of Human Resources of Oregon*, 494 U.S. at 878–79. The neutrality requirement prevents governments from

imposing "regulations that are hostile to the religious beliefs of affected citizens," or acting "in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices." *Masterpiece Cakeshop, Ltd. v. Colorado Civ. Rights Commn.*, 138 S. Ct. 1719, 1731 (2018).  The generally applicable requirement prevents governments from prohibiting "religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton v. City of Philadelphia, Pennsylvania*, 141 S. Ct. 1868, 1877 (2021).

Section 7.03 does not violate either requirement.  Instead, as explained above, Section 7.03 imposes the same permitting requirement on religious events and secular expressive events, including parades, demonstrations, and leafletting events.  S.F. Park Code § 7.03(h) (requiring a permit for a religious gathering with 50 or more people); § 7.03(a) (requiring a permit for a parade with 50 or more persons); § 7.03(b) (requiring a permit for "an event in which persons engage in petitioning, leafletting, demonstrating or soliciting when the number of petitioners, leafleteers, demonstrators, or solicitors engaging in one or more of these activities involves 50 or more such persons").  Secular social activities—such as picnics, book clubs, and birthday parties—are not treated more favorably than religious events.  Instead, *stricter* permitting requirements apply to those secular social gatherings.  *Id.* § 7.03(j) (requiring a permit for social gatherings "involving 25 or more persons").  No type of event is treated more favorably than religious events under Section 7.03.  Bogetz Dec. ¶¶ 4-5.

Accordingly, nothing in Section 7.03 suggests that San Francisco's permitting requirements are "intolerant of religious beliefs or restrict[ ] practices because of their religious nature."  *Fulton*, 141 S. Ct. at 1877.  Because Section 7.03 treats religious events like other large gatherings protected by the First Amendment and at least as favorably as all other park events, Plaintiffs' Free Exercise claim fails.

## C.      Park Code Section 7.03 Does Not Violate Due Process.

An ordinance is unconstitutionally vague in violation of due process only if it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits, . . . [or] if it authorizes or even encourages arbitrary and discriminatory enforcement."  *Hill v. Colorado*, 530 U.S. 703, 732 (2000).  "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."  *Ward*, 491 U.S. at 794; *Grayned v. City of Rockford,* 408

U.S. 104, 110 (1972) ("[C]ondemned to the use of words, we can never expect mathematical certainty from our language.").  To the contrary, "even when a law implicates First Amendment rights, the constitution must tolerate a certain amount of vagueness."  *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1151 (9th Cir. 2001).  "A statute's vagueness exceeds constitutional limits if its 'deterrent effect on legitimate expression is ... both real and substantial, and if the statute is [not] readily subject to a narrowing construction by the state courts[.]'"  *Id.* (quoting *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 60 (1976)).  "Whether a statute's chilling effect on legitimate speech is substantial should be judged in relation to what the statute clearly proscribes."  *Id.*; *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973) (substantial overbreadth "judged in relation to the statute's plainly legitimate sweep").  "[U]ncertainty at a statute's margins will not warrant facial invalidation if it is clear what the statute proscribes 'in the vast majority of its intended applications.'"  *Id.* (quoting *Hill*, 530 U.S. at 733).

Here, Plaintiffs offer nothing to show that Section 7.03 is unconstitutionally vague.  Plaintiffs contend that Section 7.03 is unconstitutionally vague with respect to the phrase "musical performance" in subsection (i) and the phrase "other structure" in subsection (t).  Both of those contentions fail.

Section 7.03(i) requires permits for musical performances that utilize sound amplification equipment.  Plaintiffs assert that that requirement is unconstitutionally vague as applied to them because, even though they sing and play instruments for their attendees while using sound amplification equipment, they do not "perceive" singing and playing musical instruments at their religious service to be a "musical performance."  MPA at 21.  Plaintiffs' argument fails.  The phrase "musical performance" is commonly defined as simply "the act of performing music."[6]  Regardless of Plaintiffs' perception, it is perfectly reasonable for San Francisco to conclude that singing and playing musical instruments for attendees constitutes a "musical performance" regardless of whether that performance occurs at a religious or secular event.

Likewise, Plaintiffs have not shown any vagueness in the phrase "other structure" in Section 7.03(t).  Section 7.03(t) requires a permit to "station or erect any table, scaffold, stage, platform,

---

[6] https://www.thefreedictionary.com/musical+performance

1    rostrum, tower, stand, bandstand, building, fence, wall, monument, dome or other structure."  In this

2    case, Plaintiffs erected a table without a permit and therefore violated Section 7.03(t) by its plain terms

3    regardless of the meaning of "other structure."  Comp. ¶ 40.  Accordingly, Plaintiffs have not shown

4    any harm from any vagueness in that language.

5           In any event, Section 7.03(t) makes clear that a permit is required to erect any structure in a

6    park, and the word structure has its ordinary definition meaning of "something built or constructed."

7    *See* https://www.dictionary.com/browse/structure.  The phrase "other structure" also "gathers meaning

8    from the words around it" in Section 7.03, and thus is reasonably read to include any object built,

9    erected, or installed in San Francisco's parks.  *Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307

10   (1961).  While its meaning may be broad, it is not vague.  Over the years, people have attempted to

11   install sculptures, teepees, and any number of other objects in parks that pose safety risks to the public,

12   damage park landscaping and otherwise interfere with the use of parks by the public.  Bogetz Dec.

13   ¶¶ 7-8.  It is not feasible to predict, and separately list, every structure that people might want to build

14   in San Francisco parks.  *Id.*  The phrase "other structures" alerts the public that permits are needed for

15   all objects erected in San Francisco parks.  *Id.*

16           **D.      Park Code Section 7.03 Does Not Violate Equal Protection.**

17           "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall

18   'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a

19   direction that all persons similarly situated should be treated alike."  *City of Cleburne, Tex. v.*

20   *Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  "The first step in equal protection analysis is to

21   identify the [defendants'] classification of groups."  *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187

22   (9th Cir. 1995) (quoting *Country Classic Dairies, Inc. v. State of Montana, Dep't of Commerce Milk*

23   *Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988)).  "Once the plaintiff establishes governmental

24   classification, it is necessary to identify a 'similarly situated' class against which the plaintiff's class

25   can be compared."  *Id.*; *Attorney General v. Irish People, Inc.,* 684 F.2d 928, 946 (D.C.Cir.1982)

26   ("Discrimination cannot exist in a vacuum; it can be found only in the unequal treatment of people in

27   similar circumstances.").  "The goal of identifying a similarly situated class ... is to isolate the factor

28

allegedly subject to impermissible discrimination. The similarly situated group is the control group." *United States v. Aguilar*, 883 F.2d 662, 706 (9th Cir.1989).

Here, Plaintiffs fail to identify any similarly situated group that was treated differently from them. Plaintiffs state vaguely that "Park Code violates equal protection in various ways, targeting select activities for needing a permit while allowing similar activities to continue without requiring one." MPA at 22. But Plaintiffs do not explain which activities Plaintiffs believe the City has singled out for needing a permit, or which activities Plaintiffs believe are "similarly situated" but do not need a permit. *Id.* Thus, Defendants can only guess about the basis for Plaintiffs' claim. Assuming that Plaintiffs contend that Section 7.03 singles out religious events for different treatment, that contention fails because Section 7.03 treats religious events in the same manner as other similarly situated, expressive events. *See supra*, page 7. Accordingly, Plaintiffs have not carried their burden to show a likelihood of success on their equal protection claim. *Winter*, 555 U.S. at 22.[7]

## II. PLAINTIFFS HAVE NOT SHOWN THAT THEY ARE LIKELY TO SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF.

Plaintiffs fail to satisfy their burden to show that they will suffer irreparable harm in the absence of preliminary relief. Plaintiffs assert that the loss of First Amendment freedoms constitutes irreparable harm, but as explained above, Plaintiffs have not demonstrated any First Amendment injury. *See supra*, Section I. Likewise, Plaintiffs do not show that they have been prevented from meeting for worship. To the contrary, Plaintiffs admit that they have continued to worship together each week notwithstanding any permit requirements from San Francisco. Comp. ¶ 30. Plaintiffs assert that they have been "precluded from having worship services" in any San Francisco park, but that is plainly incorrect. MPA at 22. Plaintiffs were offered permits to use San Francisco parks for their worship services. Bogetz Dec. ¶ 14. They simply elected not to accept those permits. *Id.* ¶¶ 20,

---

[7] Plaintiffs imply that Park Code Section 7.03 is subject to "the most exacting scrutiny," MPA at 22, but that is incorrect. "Strict scrutiny is applied when the classification involves a suspect classification, *i.e.*, race, ancestry, and alienage, or categorizations impinging upon a fundamental right, *i.e.*, privacy, marriage, voting, travel, and freedom of association." *Hoffman v. U.S.*, 767 F.2d 1431, 1434–35 (9th Cir. 1985) (internal citations removed). Where, as here, the alleged fundamental right is a burden on First Amendment rights, courts "only apply strict scrutiny when a distinction among speakers is made on the basis of content." *Honolulu Wkly., Inc. v. Harris*, 298 F.3d 1037, 1048 (9th Cir. 2002). Otherwise, courts apply rational basis review. *Id.* Here, Plaintiffs do not show any content-based distinctions in Section 7.03. Accordingly, rational basis review applies.

22, 23.  Plaintiffs own refusal to accept the permits offered to them does not constitute irreparable harm.  "[S]elf-inflicted wounds are not irreparable injury." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) (quoting *Second City Music, Inc. v. City of Chicago*, 333 F.3d 846, 850 (7th Cir. 2003)).[8]  Plaintiffs also assert that they will "suffer financial, social, and spiritual harm" in the absence of an injunction, but Plaintiffs do not provide any evidence to support that claim or even any explanation about what "financial, social, and spiritual harms" they contend they will suffer. Plaintiffs' mere conclusory assertions in a brief do not satisfy their burden to show irreparable harm. *Winter*, 555 U.S. at 22.

In addition, Plaintiffs' own conduct belies their claim of irreparable harm.  Plaintiffs waited over a year after they declined to accept permits from San Francisco to seek preliminary injunctive relief.  "Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Oakland Trib., Inc. v. Chron. Pub. Co., Inc*., 762 F.2d 1374, 1377 (9th Cir. 1985); *see also Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."). Plaintiffs offer nothing to explain why they waited to seek relief for over a year, but suddenly need injunctive relief now.

Accordingly, Plaintiffs have not satisfied their burden to show irreparable harm.  *Winter*, 555 U.S. at 22.

## III.   THE EQUITIES AND PUBLIC INTEREST FAVOR THE CITY.

In "balanc[ing] the hardships of the public interest against a private interest, the public interest should receive greater weight." *Fed. Trade Comm'n v. Affordable Media, LLC*, 179 F.3d 1228, 1236 (9th Cir. 1999); *Fund For Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992) (if injunction would implicate public interest, plaintiffs must show the "public interest favors the[m]").  Here, Plaintiffs offer nothing to suggest that the public interest favors an injunction.  Plaintiffs note that it would be in the public interest to prevent the violation of constitutional rights, but Plaintiffs have not

---

[8] In any event, Plaintiffs admit that they have continued to "gather every week on Sunday morning for worship . . ." even though they do not have permits to gather in San Francisco's parks. Comp. ¶ 30.

demonstrated any violation of constitutional rights.  *See supra*, Section I.  Likewise, Plaintiffs suggest that the public interest favors eliminating the requirement that religious events of 50 persons or more require a permit, but Plaintiffs do not explain why religious events should be excused from the same permitting requirements that apply to other expressive activities.

By contrast, San Francisco and the public would face substantial harms if the injunction is granted.  The injunction Plaintiffs seek—which would enjoin all of Section 7.03 on its face—would prevent the City from requiring permits for any use of San Francisco's parks and clearly would not be in the public interest.  Bogetz Dec. ¶¶ 2-9; Pl. Notice of Motion and Motion at 2.  Beyond the public's general interest in the implementation of laws enacted by their duly elected representatives, *see Planned Parenthood of Blue Ridge v. Camblos*, 116 F.3d 707, 721 (4th Cir. 1997), the public has an interest in a permitting system that allows San Francisco to regulate the competing uses of public space, to control amplified sound in San Francisco's parks, and to protect the public from the safety risk and inconvenience caused by structures in a park.  *Ward*, 491 U.S. at 792.  Plaintiffs assert that their events are "innocuous," but that is simply false.  MPA at 23.  Plaintiffs' unpermitted use of San Francisco's parks generated complaints from members of the public whose own activities were burdened by the amplified sound at Plaintiffs' events.  Comp. ¶ 65.  San Francisco's permitting requirement allows the city to impose appropriate guidelines on events to allow expressive activity, while reducing the harm and inconvenience to other park users and members of the public.  The public interest favors those time, place and manner limitations.  Bogetz Dec. ¶¶ 2-9; S.F. Park Code § 7.01.

## CONCLUSION

Plaintiffs have not met their burden to demonstrate a likelihood of success on the merits, irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, or that an injunction is in the public interest.  Accordingly, Plaintiffs' motion should be denied.  *Winter,* 555 U.S. at 22.

/ / /

/ / /

Dated:  April 13, 2022

DAVID CHIU
City Attorney
WAYNE SNODGRASS
TARA M. STEELEY


By:  s/Tara M. Steeley
TARA M. STEELEY

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
ROSANNA PEREZ; JONATHAN WEBB and JESSICA
WALLACE