CENTER FOR RELIGIOUS FREEDOM
Nathan W. Kellum (TN Bar# 13482; MS Bar# 8813) *
nkellum@crelaw.org
699 Oakleaf Office Lane, Ste. 107
Memphis, TN 38117
Telephone:   (901) 684-5485
*Admitted *Pro Hac Vice*

ADVOCATES FOR FAITH & FREEDOM
Robert H. Tyler (SBN 179572)
btyler@faith-freedom.com
Nada N. Higuera (SBN 299819)
nhiguera@faith-freedom.com
25026 Las Brisas Road
Murrieta, California 92562
Telephone:   (951) 304-7583

Attorneys for Attorneys for Plaintiffs
Alexander Stewart and Andrew Conway

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **ALEXANDER STEWART** and **ANDREW CONWAY** <br><br> Plaintiffs, <br><br> v. <br><br> **CITY AND COUNTY OF SAN FRANCISCO**, **CALIFORNIA, ROSANNA PEREZ**, Park Ranger with San Francisco Recreation and Parks Department, **JONATHAN WEBB**, Park Ranger with San Francisco Recreation and Parks Department, and **JESSICA WALLACE**, Park Ranger with San Francisco Recreation and Parks Department, <br><br> Defendants. | Case No.:  3:22-CV-01108-YGR <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date:      May 24, 2022 <br> Time:     2:00 p.m. <br> Place:     Judge Yvonne Gonzalez Rogers <br>             1301 Clay Street <br>             Courtroom 1 – 4th Floor <br>             Oakland, CA 94612 <br><br> Trial Date:    None |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**
**CASE NO:  3:22-cv-01108-YGR**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ iii

TABLE OF AUTHORITIES ......................................................................................................... iii

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.    STEWART AND CONWAY WILL VERY LIKELY SUCCEED
          ON THE MERITS OF THEIR CLAIMS ...................................................................2

          A.    Section 7.03(h) is a Content-Based Restriction Favoring other
               Topics over Religion ............................................................................................3

          B.    Section 7.03(i)'s regulation on "musical performance" is
               unduly vague and not narrowly tailored ..............................................................6

          C.    Section 7.03(t)'s regulation on "table…or other structure" is
               unduly vague and not narrowly tailored ..............................................................7

          D.    Application and enforcement of various subsections of
               § 7.03 work together to eliminate Stewart and Conway's ability
               to worship in public parks, leaving them no alternative means of
               communication .....................................................................................................9

    II.   STEWART AND CONWAY WILL SUFFER IRREPERARABLE HARM
          ABSENT INJUNCTIVE RELIEF ...............................................................................9

    III.  THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR
          AN INJUNCTION ......................................................................................................11

CONCLUSION ..............................................................................................................................12

CERTIFICATE OF SERVICE ......................................................................................................13

**TABLE OF AUTHORITIES**

*ACLU of Nevada v. City of Las Vegas*,
  466 F.3d 784 (9th Cir. 2006) ................................................................................ 3, 8

*Arc of California v. Douglas*,
  757 F.3d 975 (9th Cir. 2014) ................................................................................. 11

*Berger v. City of Seattle*,
  569 F.3d 1029 (9th Cir. 2009) ................................................................................. 3

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*,
  508 U.S. 520 (1993) ................................................................................................. 6

*City of Cleburne v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985) ................................................................................................. 6

*Cuviello v. City of Vallejo*,
  944 F.3d 816 (9th Cir. 2019) ........................................................................... 1, 7, 8

*Forsyth Cty. v. Nationalist Movement*,
  505 U.S. 123 (1992) ............................................................................................... 10

*Foti v. City of Menlo Park*,
  146 F.3d 629 (9th Cir. 1998) ................................................................................... 3

*Hoye v. City of Oakland*,
  653 F.3d 835 (9th Cir. 2011) ................................................................................... 3

*Kolender v. Lawson*,
  461 U.S. 352 (1983) ................................................................................................. 6

*Lydo Enters, Inc. v. City of Las Vegas*,
  745 F.2d 1211 (9th Cir. 1984) ............................................................................... 11

*Planned Parenthood Arizona, Inc. v. Humble*,
  753 F.3d 905 (9th Cir. 2014) ................................................................................... 2

*R.A.V. v. City of St. Paul*,
  505 U.S. 377 (1992) ................................................................................................. 3

*Republic of the Philippines v. Marcos*,
  862 F.2d 1355 (9th Cir. 1988) ................................................................................. 2

*Schneider v. New Jersey*,
  308 U.S. 147 (1939) ................................................................................................. 9

*Thomas v. Chicago Park Dist.*,
    534 U.S. 316 (2002)............................................................................................................5

# INTRODUCTION

Through the employ and enforcement of San Francisco Park Code § 7.03, Defendants (referred to collectively as SFRPD) mandate Alexander Stewart (Stewart) and Andrew Conway (Conway) secure a permit, pay a fee, put together a health and safety plan, arrange for a certificate of insurance for coverage of two million dollars, and secure a bond, to conduct a worship service with a modest number of people in a San Francisco public park. This restriction impinges on rights assured in both the U.S. and California constitutions.[1]

Unable to defend § 7.03 under the applicable scrutiny (strict scrutiny), SFRPD seeks to avoid the standard, portraying the permitting scheme as content neutral. But the contention does not hold up against the language of the ordinance. The ordinance does not regulate every assembly in a park the same way; it discriminates according to content. Whether a given activity requires a permit depends largely on its subject matter, marking § 7.03 a content-based restriction.

Contrary to SFRPD's suggestion, Stewart and Conway's concern is not that religious speech is treated better under § 7.03. If only the Park Code worked in this way, or put religious speech on equal footing, litigation could have been avoided. The issue is that SFRPD treats religion significantly worse than other topics, forcing participants in a "religious event" to obtain a permit and take on the attendant burdens whenever the activity involves 50 or more people – all while allowing similar events with dissimilar content to carry on without this imposition. Under § 7.03, an assembly of 50 or more people can organize a voter drive, hold a demonstration, participate in political rally, put on a festival, conduct a play, perform a comedy routine, or deliver

---

[1] SFRPD contends the Liberty of Speech clause in the California Constitution offers no greater protection to Stewart and Conway than the First Amendment to the U.S. Constitution because the differences between the two constitutions are not "relevant" in the case. (Opp. Memo., p. 5 n. 2). But they overlook the holding in *Cuviello v. City of Vallejo* where the Ninth Circuit held a prior restraint on speech dictates an evaluation under the state constitution because "California Constitution's protection of public speech sweeps more broadly than the First Amendment's protection." 944 F.3d 816, 827 (9th Cir. 2019). And § 7.03 permitting scheme is a prior restraint.

a public speech, in a San Francisco public park sans permit. But an assembly of the same number cannot participate in a worship service without one.

Even to the extent § 7.03 does not delve into content with its regulations on activities, in proscribing communication aids like amplification for "musical performance" and use of tables and structures for speech, these regulations are not reasonable time, place, and manner restrictions as required for content-neutral laws. The operative terms are unduly vague and lead to arbitrary decision-making about speech, infringing on too much protected expression.

## ARGUMENT

Stewart and Conway's sought-after injunctive relief is warranted. They demonstrate a strong likelihood of success on the merits of their claims, the irreparable harm they suffer without injunctive relief, how this harm greatly outweighs any conceivable harm to SFPRD, and the benefit the injunctive relief brings to the general public. *See Planned Parenthood Arizona, Inc. v. Humble*, 753 F.3d 905, 911 (9th Cir. 2014) (setting out factors for granting preliminary injunctive relief).

### I. STEWART AND CONWAY WILL VERY LIKELY SUCCEED ON THE MERITS OF THEIR CLAIMS

Stewart and Conway demonstrate more than a "fair chance" of success on the merits and certainly raise "serious questions" about the constitutional issues before the Court. *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988). A proper and complete reading of § 7.03 undergirds the veracity of their claims. Particularly, Stewart and Conway have demonstrated that § 7.03(h)'s restriction on "religious events" is an invalid content-based restriction, § 7.03(i) regulation on amplification of "musical performances" is unduly vague and not narrowly tailored, and, likewise, § 7.03(t) regulation on "tables…or other structure" is unduly vague and not narrowly tailored. Further, Stewart and Conway have shown the application of various restrictions frustrate their attempts to worship in various public parks, leaving them with no alternative means of

communication.[2]

## A. Section 7.03(h) is a Content-Based Restriction Favoring other Topics over Religion

A content-based restriction in traditional public fora is presumptively unconstitutional. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992); *ACLU v. City of Las Vegas*, 466 F.3d 784, 792 (9th Cir. 2006). This presumption can be overcome only if the government entity can show the regulation is the least restrictive means to further a compelling interest. *Hoye v. City of Oakland*, 653 F.3d 835, 853 (9th Cir. 2011). For self-evident reasons, SFPRD cannot climb this mountain- and they do not even try. Instead, SFPRD posits that § 7.03(h) regulating religious events is content-neutral, analogizing the restriction to § 7.03(j) resulting social gatherings, in claiming § 7.03 does not impose different requirements on religious events. (Opp. Memo., pp. 5-8). The argument is extremely myopic. Skipping over express provisions in the ordinance, SFPRD fails to account for the wide variety of ways § 7.03 deals with different kinds of content or the universe of expression not covered at all by the permit scheme.

A content distinction is found whenever a regulation "singles out certain speech for differential treatment based on the idea expressed." *Foti v. City of Menlo Park*, 146 F.3d 629, 636 n. 7 (9th Cir. 1998). If an enforcement official is required to examine speech to determine whether a permit is granted or if a violation has occurred, the restriction is most likely content-based. *Berger v. City of Seattle*, 569 F.3d 1029, 1051-52 (9th Cir. 2009). These conditions are present with

---

[2] SFPRD claims Stewart and Conway's Verified Complaint is not properly verified because it does not say "under the laws of the United States." (Opp. Memo, p. 5 n.1). The charge is misguided and unsupported by legal authority. If an unsworn declaration is done within the United States (as here), it is proper as long as it verifies allegations "under penalty of perjury" as "true and correct," which Stewart and Conway do, fully satisfying § 1746(2).

§ 7.03. A side-by-side comparison with how § 7.03 deals with different kinds of content reveals its regulation on religious events is most assuredly a content-based restriction.

Section 7.03(e) regulation on various forms of entertainment, like drama productions, pantomime, and juggling shows, in public parks, does not require a permit if the event involves 50 people, or, for that matter, 5,000,000 people. The same is true for circuses and festivals, as they fall under this same provision. But if the event incorporates a gospel message, denoting the event as a religious event, a permit suddenly becomes obligatory. Section 7.03(f) has like effect. Individuals can go to a park and put on a magic show or a comedic routine drawing an audience much greater than 50 people without a permit. Hence, Stewart and Conway can gather a group of 50 or more in a park and tell jokes and do card tricks, but they can read scripture only if they have a permit on their person. Speech-making, regulated by § 7.03(g), presents a similar contrast with religious events. A person or a group of people can deliver speeches in a public park on virtually any topic, whether it be about overturning *Roe v. Wade*, Black Lives Matter, COVID-19 restrictions, no matter how many people participate or show up to hear the talk, but a sermon will require a permit once the total number of people participating and listening exceed 49.

SFRPD also claims they apply the same permitting requirements to religious events as they do to petitioning, leafletting, demonstrating, and soliciting, set out in § 7.03(b). (Opp. Memo., p. 6). But a more correct reading of the two subsections indicate otherwise. Although § 7.03(b) ties a need for a permit to 50 or more people, the requirement is not the same as § 7.03(h). Unlike the restriction on those partaking in religious events, secular groups are free to participate in one of these other expressive activities with 50 or more people in a public park without a permit as long the activity extends beyond a 500-foot radius. There is no such option for religious events. Also, the two provisions are distinguishable in how the number 50 is determined, with SFRPD, treating

religious expression less favorably. Section 7.03(b) only contemplates the speakers, that is, those seeking petitions, handing out literature, demonstrating with signs, or asking someone to participate in a cause, in the counting, while § 7.03(h), as evidenced by SFRPD enforcement against Stewart and Conway, includes others besides speakers. With religious events, a permit is needed if there are 50 or more persons in the vicinity, whether they are bystanders, attendees, security, or speaking in the religious event.

Additionally, SFRPD ignores the limitless range of speech-related activities not addressed by § 7.03. A variety of expressive events, like voter drives, field trips, and tour groups, as well as all other activities not mentioned in the ordinance, are necessarily treated better than religious events, because they are not regulated at all. Anyone wishing to participate in an unspecified form of expression in a public park can avoid the burden of a permit. Stewart, Conway and their church do not have this luxury. Comparing and contrasting speech not regulated by the ordinance (as well as the non-religious speech that is regulated by the ordinance) shows § 7.03 singles out religious speech for discriminatory treatment.

SFRPD portrays the ordinance as treating all events equally, citing *Thomas v. Chicago Park Dist*., 534 U.S. 316, 325 (2002) in support of this position. However, contrary to § 7.03, the verbiage of the Chicago ordinance reviewed in *Thomas* treats all events the same. There, the park ordinance required a permit to "conduct a public assembly, parade, picnic, or other event involving more than fifty individuals…" or involved the use of amplification. *Id.* at 318. The distinction between this simple, generally applicable regulation for all speech events in a public park and the multi-faceted § 7.03, containing assorted subsections for different kinds of speech events, is stark. While the ordinance in *Thomas* requires all events involving more than 50 individuals obtain a permit, the ordinance here turns on the content of the speech.

Thus, SFPRD's contention that the Park Code treats religious events like other types of expressive activity is untenable. Section 7.03 dictates religious events receive less favorable handling. And the content-based nature of the restriction is not saved by a separate subsection of § 7.03 requiring a permit for 25 or more people participating in social gatherings. This regulation may have its own constitutional concerns, but, regardless, the provision cannot make up for the sundry ways § 7.03 treats other content better than religious content.[3]

### B. Section 7.03(i)'s regulation on "musical performance" is unduly vague and not narrowly tailored

Stewart and Conway have also demonstrated a likelihood of success on the merits of their claim that § 7.03(i) regulating amplification is void for vagueness because it prevents a person of ordinary intelligence from knowing what is prohibited and invites arbitrary and discriminatory enforcement by government officials. *See Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Downplaying the concern, SFPRD equates a church minister leading worship through singing of songs to a "musical performance" regulated by § 7.03(i). (Opp. Memo., pp. 17-19). But by no reasonable interpretation can leading worship classify as a musical performance. SFPRD notes that "[t]he phrase 'musical performance' is defined as simply 'the act of performing music.'" (Opp. Memo., p. 18). But this observation just begs the question what the word "performance" means. Using the same dictionary offered by SFPRD, a "performance" is defined as "the act or style of performing a work or role before an audience" and as "a presentation, especially a theatrical one, before an audience."[4] Having the benefit of this relevant definition, the

---

[3] Because SFPRD discriminates against religion by distinguishing it from other content, the restriction further violates the free exercise of religion clause. *See Church of Lukumi Babalu Aye, Inc. v. Hialeah,* 508 U.S. 520, 546 (1993). Also, the discriminatory effect triggers an equal protection violation. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Opposing these claims, SFPRD rests entirely on their erroneous belief that they impose the same permitting requirements on secular events as they do religious events. Being mistaken about the impact of the ordinance, SFPRD is also mistaken about their liability for it.

[4] https://www.thefreedictionary.com/performance

misapplication of musical performance to Stewart and Conway's worship service becomes apparent. A performance involves an audience, not participants.

SFPRD claims it was reasonable for park rangers to see the worship service and conclude it was a musical performance. The deduction is dubious. In any event, a due process claim is evaluated from the perspective of those subject to criminal penalty, and Stewart and Conway had no reason to believe leading worship is the same as a musical performance. The worship leaders were not there to entertain. The congregation was not there to be an audience. Had San Francisco intended to regulate all playing of musical instruments, regardless of purpose, it could have written the regulation to cover this activity. But having employed the term "musical performance," they cannot twist its meaning to engulf church worship, at least not without violating due process.

Moreover, § 7.03(i) regulation on amplification is not a narrowly tailored measure. The Ninth Circuit, in *Cuviello*, invalidated a permit requirement for "*any* use of a sound-amplifying device at *any* volume by *any* person at *any* location – without any specifications or limitations that may tailor the permit requirement to situations involving the most serious risk to public peace or traffic safety." 944 F.3d at 830 (emphasis in original). The holding controls here with a like permit requirement for amplification in traditional public fora.

SFPRD tries to distinguish *Cuviello* on the insignificant point that the regulation there applied to a city, as opposed to all public parks. Much like *Cuviello*, § 7.03(i) applies to "*any* use of sound-amplifying device at *any* volume by *any* person at *any* location" in *any* park in the city. *Id.* And, as in *Cuviello*, the ordinance curbs amplification "without any specifications or limitations that may tailor the permit requirement to situations involving most serious risk to public peace or traffic safety." *Id.* Section 7.03(i)'s permit requirement for amplification is an overly broad restriction engulfing substantially more speech than necessary to achieve its supposed ends.

**C. Section 7.03(t)'s regulation on "table…or other structure" is unduly vague and not narrowly tailored**

Likewise, § 7.03(t), which requires a permit for someone to "station or erect any table, scaffold, stage, platform, rostrum, tower, stand, bandstand, building, fence, wall, monument, dome or other structure" in a public park, is unconstitutionally vague and overbroad.

SFPRD argues this restriction on tables and other structures is necessary because they need to deal with objects that "pose safety risks to the public, damage park landscaping and otherwise interfere with the use of parks by the public." (Opp. Memo., p. 12.)  Propping up this rationale, they claim § 7.03(t) is not vague.  However, the connection between their listed concerns and the regulation of tables and any other structure is not readily perceptible.  While permission seems appropriate for some type of permanent structure placed on park property, the same cannot be said for a portable folding table, or a large swath of things that could qualify as a table or a structure. A table is "a piece of furniture usually supported by one or more legs and having a flat surface on which objects can be placed"[5] and a structure encompasses "something made up of a number of parts that are held or put together in a particular way."[6]  Numerous items falling within these definitions, including Stewart and Conway's folding table, pose absolutely no risk to safety, damage to park property, or interference with park use.

The "erection of tables in a public forum is expressive activity protected by our Constitution to the extent that the tables facilitate the dissemination of First Amendment speech." *ACLU of Nevada v. City of Las Vegas*, 466 F.3d 784, 799 (9th Cir. 2006).  Stewart and Conway have such intention, wishing to use their table for communion, an integral part of their worship service.  As *Cuviello* held regarding a permit requirement on amplification, a permit requirement on tables suffers from the same constitutional infirmity, placing too great an imposition on a free speech aid. 944 F.3d at 830.  Because the restriction goes far beyond items generating legitimate safety or landscaping concerns, encompassing protected speech in its scope, § 7.03(t) and its regulation on tables and structures is not a narrowly tailored measure.

---

[5] https://www.thefreedictionary.com/table

[6] https://www.thefreedictionary.com/structure

**8**
**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**
**CASE NO:  3:22-cv-01108-YGR**

### D. Application and enforcement of various subsections of § 7.03 work together to eliminate Stewart and Conway's ability to worship in public parks, leaving them no alternative means of communication

Staunchly defending § 7.03 in this action, SFPRD ensure their continued enforcement of the Park Code to deprive Stewart and Conway of a public park venue for their worship activity.

Stewart and Conway have explored every conceivable option for worshipping in San Francisco public parks, having tried various parks, a popular park, a remote park, a park where amplification is not needed as much, a place that is not even a park. But despite these efforts they were cited under § 7.03 at every turn. Even when they stayed under 50 people and refrained from using amplification, they were cited (because they used a table in their worship service). Stewart and Conway also investigated the prospect of obtaining a permit, only to find the process unworkable. Every door is closed to them, leaving them with no viable option for worshiping in public parks.

SFPRD is unsympathetic to their plight, and make light of it, recommending Stewart and Conway go somewhere else. (Opp. Memo., p. 15.) But steering clear of public parks where they have every constitutional right to be and speak is not a suitable alternative. "[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Schneider v. New Jersey*, 308 U.S. 147, 163 (1939). Stewart, Conway, and the rest of their church want to conduct worship services in public parks. It is irrelevant that, after being prevented from worshipping in San Francisco public parks, they have conducted worship services at other places. The cogent point remains: they should be free to worship in the public parks.

Keeping Stewart and Conway from worshipping in public parks does not afford them ample alternative means of communication.

## II.  STEWART AND CONWAY WILL SUFFER IRREPERARABLE HARM ABSENT INJUNCTIVE RELIEF

Stewart and Conway have been precluded from having worship services in any SFPRD park as well as the U.N. Plaza. Without relief from this Court, they will continue to suffer financial, social, and spiritual harm. SFPRD wants to pin the blame on Stewart and Conway, reckoning they caused the harm to themselves by not applying for a permit. (Opp. Memo., p. 20.) But Stewart and Conway are not obliged to put up with an unconstitutional process and cope with the burdens that come with it. Aside from being required to obtain governmental permission to engage in protected expression in a traditional public forum, § 7.03 and SFPRD's enforcement thereof mandates they secure a health and safety plan, a certificate of insurance for coverage of two million dollars, pay a permit fee, submit a deposit, and obtain a bond.[7]

Further, in complying with § 7.03's permitting process, Stewart and Conway must subject themselves to the arbitrary decision-making of those fashioning the permits. The potential for biased decisions affecting speech is great, as illustrated by the permit they attempted to obtain, with park officials unilaterally moving the worship service from a desirable spot to an unusable portion of another park and placing there unreasonable constraints on amplification use. The unfettered discretion utilized by SFPRD officials is unconstitutional. *See Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 133 (1992) (striking down permitting law that allowed government officials to support some views over others).

Though Stewart and Conway are carrying on with their worship services in other locations, they are presently and continually denied the freedom to worship in public parks, establishing irreparable harm to them and the need for injunctive relief. SFPRD claims Stewart and Conway's need for injunctive relief is undermined by waiting for a year to file a lawsuit. The argument is misinformed, for at least a couple of reasons. First, SFPRD's calculation is off. Stewart and Conway filed their lawsuit within a year of learning SFPRD's unwillingness to grant them relief

---

[7] SFRPD endeavors to defend some of the conditions they place on top of the permit requirement, citing cases where a similar condition was upheld in a different context. (Opp. Memo. pp. 12-14). But, notably, SFRPD is unable to produce any authority supporting the imposition of all – or even more than one - of them to secure permission to speak in a traditional public forum.

from § 7.03. Second, Stewart and Conway have not been waiting to file. Rather, they attempted to informally resolve their concerns before resorting to litigation. (VC, ¶ 163-171.) Only when it became apparent that a lawsuit was needed to vindicate their rights did they direct counsel to proceed with preparing a complaint along with motion for preliminary injunction. Good faith efforts of a party to reach an amicable resolution to avoid litigation does not constitute undue delay.

Moreover, purported delay in filing is only a single factor and courts are "loath to withhold relief solely on this ground." *Lydo Enters, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1214 (9th Cir. 1984). Indeed, the inconsequential nature of so-called delay is especially true where, as here, the unconstitutional restriction persists. Tardiness is "not particularly probative in the context of ongoing, worsening injuries." *Arc of California v. Douglas*, 757 F.3d 975, 991 (9th Cir. 2014). *See Cuviello*, 944 F.3d at 833 (held delay of one year and 5 months to file motion for preliminary injunction not significant enough to undercut irreparable harm).

### III. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR AN INJUNCTION

It is unquestionably in the public's best interest for this Court to enjoin an unconstitutional content-based prior restraint on protected speech. On the face of the ordinance, churches and others who wish to engage in religious events are treated worse than their secular counterparts. And, in practice, SFPRD has wielded various provisions § 7.03 to target and completely shut down Stewart and Conway's worship services in public parks.

SFPRD does not offer much to counter or rationalize these inequities. They protest that an injunction on § 7.03 would prevent them from maintaining competing uses of space. Not so. The injunction would give them an excellent opportunity to utilize a permit scheme that does not violate constitutional rights.

The public interest and the balance of the equities favor the injunctive relief that Stewart and Conway seek in this cause.

# CONCLUSION

For the foregoing reasons, as well as reasons set forth in their original memorandum in support, Stewart and Conway respectfully request this Court grant their Motion for Preliminary Injunction.

Dated: May 10th, 2022

Respectfully submitted,

| /s/ Robert H. Tyler<br>Robert H. Tyler<br>CA Bar # 179572<br>rtyler@tylerbursch.com<br>Advocates for Faith & Freedom<br>24910 Las Brisas Road, Suite 110<br>Murrieta, CA 92562<br>Telephone: (951) 600-2733<br>Facsimile: (951) 600-4996<br><br>Attorney for Plaintiffs Alexander Stewart and Andrew Conway | /s/ Nathan W. Kellum<br>Nathan W. Kellum*<br>TN BAR #13482; MS BAR # 8813<br>Center For Religious Expression<br>699 Oakleaf Office Lane, Suite 107<br>Memphis, TN  38117<br>Telephone: (901) 684-5485<br>Facsimile: (901) 684-5499<br>Email:  nkellum@crelaw.org<br><br>Attorney for Plaintiffs Alexander Stewart and Andrew Conway<br>*Admitted *Pro Hac Vice* |
|---|---|
| /s/ Nada N. Higuera<br>Nada N. Higuera<br>CA Bar #299819<br>Nhiguera@faith-freedom.com<br>Advocates for Faith & Freedom<br>25026 Las Brisas Road<br>Murrieta, CA 92562<br>Telephone: (951) 600-2733<br>Facsimile: (951) 600-4996<br><br>Attorney for Plaintiffs Alexander Stewart and Andrew Conway | |

**CERTIFICATE OF SERVICE**

I hereby certify that on May 10, 2022, the foregoing was filed electronically with the Clerk of the Court by using the CM/ECF system, and that a copy of the foregoing will be delivered to a process server for service on defendants.

<u>/s/Nathan W. Kellum</u>
Attorney for Plaintiff