UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALEXANDER STEWART, ET AL.,**<br><br>Plaintiffs,<br><br>v.<br><br>**CITY AND COUNTY OF SAN FRANCISCO, CALIFORNIA, ET AL.,**<br><br>Defendants. | Case No.  4:22-cv-1108-YGR<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION IN PART AND DENYING IN PART**<br><br>Re: Dkt. No. 13 |

Plaintiffs Alexander Stewart and Andrew Conway filed this civil rights action under 42 U.S.C. § 1983 and the California State Constitution against the City and County of San Francisco, as well as park rangers Rosanna Perez, Jonathan Webb, and Jessica Wallace challenging the federal and state constitutionality of the City and County of San Francisco Park Code Section 7.03 ("Section 7.03" or "the regulation" which requires a permit for certain types of events, including religious events. (Dkt. No. 1, Complaint, "Compl.".)

Plaintiffs challenge the constitutionality of Section 7.03 on its face and as applied to plaintiffs' religious worship and expression in San Francisco public parks, and seeks injunctive and declaratory relief, as well as nominal damages. (Compl. ¶ 2.) Plaintiffs assert six causes of action including violations of: (1) the Free Speech Clause of the United States Constitution; (2) the Due Process Clause of the United States Constitution; (3) the Free Exercise of Religion Clause under the United States Constitution; (4) the Equal Protection Clause of the United States Constitution; (5) the Freedom of Assembly Clause of the United States Constitution; and (6) the Liberty of Speech Clause of the California State Constitution.

Pending before the Court is plaintiffs' motion for preliminary injunction. (Dkt. No. 13, Motion, "Mot.".) Having carefully considered the papers submitted and the pleadings, oral argument held on May 24, 2022, and for the reasons set forth below, the Court **GRANTS** the motion in part.

## I. BACKGROUND

The following allegations stem from plaintiffs' complaint:

Plaintiffs Alexander Stewart and Andrew Conway are evangelical Christians who "want to worship God on a regular basis." (Compl. ¶¶ 16–17.) Plaintiffs believe in church fellowship and regular assembly of worship with fellow christians. (*Id*. ¶ 24.) As part of their worship, plaintiffs want to attend weekly worship services in public parks in San Francisco. (*Id*. ¶ 31.) Plaintiffs are both affiliated with Christ's Forgiveness Ministries ("CFM") in San Francisco. (*Id*. ¶ 19.) CFM is a non-denominational Christian ministry which seeks to serve the world through evangelism and church planting. (*Id*. ¶ 20.) Plaintiff Stewart is an elder with CFM. (*Id*. ¶ 19.)

CFM gathers every Sunday morning for worship. (*Id*. ¶ 30.) CFM does not own any property, so being able to access public parks which are freely accessible and suitable for worship services is important for CFM to be able to carry out its mission of sharing the gospel of Jesus Christ with others. (*Id*. ¶¶ 33–36.) CFM's weekly services usually range from 40 to 70 attendees. (*Id*. ¶ 36.) Church services typically begin with 30 minutes of singing and playing musical instruments, followed by testimonies, communion, offering, and a sermon. (*Id*. ¶ 38.) CFM uses sound amplification so that attendees can hear the music and sermon; without such amplification, plaintiffs cannot effectively participate in their worship services. (*Id*. ¶ 39.)

### A. Plaintiffs' Attempts to Worship in San Francisco Public Parks

As part of their religious faith, plaintiffs participate in regular, weekly assembly of worship with others. (*Id*. ¶¶ 24–25, 29.) Over the course of four months, plaintiffs had their church services interrupted by park rangers, citing violations of various sections of Section 7.03.

On January 24, 2021, plaintiffs started their church service at San Francisco's Palace of Fine Arts Park. (*Id*. ¶ 46.) About an hour and a half into the service, service was interrupted by park ranger and plaintiff Stewart, as a church representative, received a $192.00 fine for violating Section 7.03 which requires a permit for "musical performances" with sound amplification. (*Id*. ¶¶ 47–50.) Plaintiffs disagreed with the fine but decided to pay it and hoped to find another park to worship in. (*Id*. ¶¶ 51–52.) At the time, plaintiffs believed that the rule restricting amplification was limited to Palace of the Fine Arts given the touristy nature of the park. (*Id*. ¶ 53.)

Two weeks later, on February 7, 2021, plaintiffs decided to worship in Potrero del Sol Park, believing that a permit was not needed for that location. (*Id*. ¶ 54.) However, 30 minutes into the worship service, plaintiffs were confronted by park ranger Webb who informed plaintiffs that they were in violation of Section 7.03 because they were having a musical performance with sound amplification without a permit. (*Id*. ¶ 71.) Plaintiff Stewart was issued another citation for this incident. (*Id*. ¶ 75.)

CFM received another citation two weeks later on February 21, 2021 due to the group's worship at McClaren Park. (*Id*. ¶¶ 132–33.) However, this time the citation was not for using sound amplification, as CFM did not use amplification during this service. Instead, CFM was cited for simply having a religious service with more than 50 people without a permit. (*Id*. ¶¶ 127–33.)

Despite the troubling and constant presence of park rangers and police officers at their worship services and the recurring citations, plaintiffs did not wish to give up their right to worship in public spaces. (*Id*. ¶ 134.) On March 21, 2021, plaintiffs decided to worship at the United Nations Plaza, an area plaintiffs did not consider to be a public park. (*Id*. ¶ 135.) A few minutes into the worship service, a citation was written by ranger Wallace for violation of Section 7.03. (*Id*. ¶ 138.)

**B.      San Francisco's Park Code Section 7.03**

City and County of San Francisco's Park Code Section 7.03 entitled "Permits Required" reads in its entirety:

> No person shall, without a permit, perform any of the following acts in any park:
> (a) Conduct or sponsor a parade involving (1) 50 or more persons; (2) the use of any street in any park; or (3) vehicles.
>
> (b) Conduct or sponsor an event in which persons engage in petitioning, leafletting, demonstrating or soliciting when the number of petitioners, leafletters, demonstrators, or solicitors engaging in one or more of these activities involves 50 or more such persons at the same time within an area circumscribed by a 500 foot radius.
>
> (c) Engage in soliciting in the Music Concourse Area of Golden Gate Park. This subsection shall not preclude the Commission from prohibiting persons from soliciting inside the Japanese Tea Garden.

3

(d) Sell or offer for sale books, newspapers, periodicals or other printed material.

(e) Conduct or sponsor any exhibit, promotion, dramatic performance, theatrics, pantomime, dance, fair, circus, festival, juggling or other acrobatics or show of any kind or nature which has been publicized four hours or more in advance.

(f) Perform any feat of skill or produce any amusement show, movie or entertainment which has been publicized four hours or more in advance.

(g) Make a speech which has been publicized four hours or more in advance.

**(h) Conduct or sponsor a religious event involving 50 or more persons;**

(i) Conduct or sponsor a concert or musical performance which (1) has been publicized four hours or more in advance, or (2) utilizes sound amplification equipment, or (3) involves a band or orchestra.

(j) Participate in a picnic, dance or other social gathering involving 25 or more persons.

(k) Sell or provide food to persons, except that no permit is required when a person participating in a picnic or social gathering of 25 or fewer persons provides food to others who are also participating in the picnic or social gathering.

(l) Conduct or sponsor a race or marathon which involves 25 or more persons as participants or which obstructs or interferes with the normal flow of vehicular or pedestrian traffic.

**(m) Conduct or sponsor any event which utilizes sound amplification equipment, as defined in Part II, Chapter VIII (Police Code) of the San Francisco Municipal Code.**

(n) Conduct or sponsor an exhibition.

(o) Conduct or sponsor an animal show.

(p) Conduct a wedding ceremony.

(q) Conduct or sponsor an art show.

(r) Operate any amusement park device. The Commission may prohibit the operation of such devices in any park or, if it allows such operation, may designate those locations where such operation is permitted.

(s) Conduct or sponsor an organized kite-flying event of any club or organization.

(t) Station or erect any table, scaffold, stage, platform, rostrum, tower, stand, bandstand, building, fence, wall, monument, dome or other structure.

S.F. Park Code § 7.03 (emphasis supplied).

### C. Efforts to Obtain a Permit

After reviewing Section 7.03, plaintiffs decided that CFM would need a permit for worship services in San Francisco public parks. Plaintiffs started the application process to obtain the necessary permits for their church services. It was not until plaintiffs started the application that they realized they would also need to provide a "health and safety plan, a certificate of insurance for coverage of two million dollars, payment of the permit fee, and a bond." (Compl. ¶ 151.) After further consideration, plaintiffs decided that they could not go forward with the permitting requirements due to "the costs and burdensome requirements." (*Id.* ¶ 157.)

## II. LEGAL STANDARD

A preliminary injunction is an extraordinary remedy, which should be granted only in limited circumstances and where the merits of the case plainly favor one party over the other. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

The Court considers four factors when evaluating motions for a preliminary injunction, namely whether: (1) the moving party has demonstrated that it is likely to succeed on the merits; (2) the moving party will suffer irreparable injury if the relief is denied; (3) the balance of the hardships favor the moving party; and (4) the public interest favors granting relief. *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20). The plaintiff must make a threshold showing of likelihood of success on the merits and irreparable harm, but a stronger showing on one element may offset a weaker showing on

another. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–33 (9th Cir. 2011). In that regard, courts employ a sliding scale: "serious questions going to the merits and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (internal quotations omitted); *see also Herb Reed Enters., LLC v. Florida Entertainment Mgm't, Inc.*, 736 F.3d 1239, 1242 (9th Cir. 2013).

The burden of showing a likelihood of success on the merits is "placed on the party seeking to demonstrate entitlement to the extraordinary remedy of a preliminary injunction at an early stage of the litigation, before the defendant has had the opportunity to undertake extensive discovery or develop its defenses." *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 714 *opinion amended on reh'g*, 508 F.3d 1146 (9th Cir. 2007).

## III. DISCUSSION

Plaintiffs request that the court enter a preliminary injunction enjoining defendants from enforcing and applying San Francisco Park Code Section 7.03 as applied to plaintiffs' religious worship and expression in San Francisco public parks. (Compl. ¶ 1.) While plaintiffs' motion for preliminary injunction broadly refers to Park Code 7.03, at the hearing plaintiffs confirm that they only seek to enjoin subsections 7.03(h) and (m) of the regulation. Plaintiffs argue that these subsections contravene the California State Constitution and the United States Constitution both on its face and in its application to plaintiffs' religious worship. Plaintiffs also argue that they are suffering, and will continue to suffer, irreparable harm absent injunctive relief, that worshipping in public parks do no harm to the City, and that upholding plaintiffs' constitutional rights serve the public interest. Defendants oppose all of plaintiffs' arguments. Defendants' argument with respect to subsection (m) is well taken. However, defendants' opposition with respect to Section 7.03(h) ignores the content-based nature of the regulation and thus fails.

### A. Whether Plaintiffs Have Demonstrated a Likelihood of Success on the Merits

To establish a likelihood of success, plaintiffs need not conclusively prove their case or show that they are "more likely than not" to prevail. *Univ. of Tex. V. Camenisch,* 451 U.S. 390, 395 (1981). Rather, a "fair chance" of success is the standard for granting preliminary injunctive

1  relief. *Benda v. Grand Lodge of IAM,* 584 F.2d 308, 315 (9th Cir. 1978). Here, with respect to

2  Park Code Section 7.03(h), the Court finds that plaintiffs have established a likelihood of success

3  on the merits of their claims for violation of free speech and assembly, and freedom to exercise

4  religion. Plaintiffs have not met their burden with respect to Park Code Section 7.03(m).

**1.  Likelihood of Success of Plaintiffs' Violation of Free Speech and Assembly Claims**

Plaintiffs argue that Section 7.03 violates their First Amendment and state constitutional rights to free speech and assembly.

**a.  Free Speech and Assembly Claims Under the First Amendment**

The First Amendment prohibits governmental entities "from enacting laws 'abridging the freedom of speech, . . . or the right of the people peaceably to assemble.' " *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1020–21 (9th Cir. 2009) (quoting U.S. Const. amend. I). "The right of peaceable assembly is a right cognate to th[at] of free speech." *De Jonge v. State of Oregon*, 299 U.S. 353, 364 (1937)); *accord Kuchenreuther v. City of Milwaukee*, 221 F.3d 967, 972 n.16 (7th Cir. 2000) ("We evaluate free speech and free assembly claims under the same analysis."). Thus, the Court's analysis of plaintiffs' free speech claims applies equally to plaintiffs' free assembly claims.

The extent to which a governmental entity can constitutionality restrict protected speech depends on "the character of the property at issue." *Frisby v. Schultz*, 487 U.S. 474, 479 (1988). The Supreme Court has recognized that "members of the public retain strong free speech rights when they venture into public streets and parks, 'which have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469 (2009) (citations omitted). In order to preserve this freedom, governmental entities are strictly limited in their ability to regulate private speech in such "traditional public fora." *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.,* 473 U.S. 788, 800 (1985).

However, despite the broad First Amendment protection provided to speech in public parks, certain restrictions on speech in public parks are valid. Specifically, governmental entities

may issue reasonable laws governing the time, place, or manner of speech. *Berger v. City of Seattle*, 569 F.3d 1029, 1036 (9th Cir. 2009). While "[a] permitting requirement is a prior restraint on speech and therefore bears a 'heavy presumption' against constitutionality," such requirements are constitutional to the extent certain requirements are met. *Id*. at 1037. To pass constitutional muster, a permit requirement must be a reasonable time, place, or manner restriction. *Id*. at 1036. Such permit requirements are reasonable where they are: (1) content-neutral; (2) narrowly tailored to serve a significant governmental interest; and (3) leave open alternative channels for communication of information. *Id.* at 1036. Additionally, the permitting system may not delegate overly broad licensing discretion to governmental officials. *Long Beach Area Peace Network,* 574 F.3d at 1024.

When a permit requirement is content-based, it is only reasonable, and thus constitutional, if it passes the strict scrutiny test. *Reed,* 576 U.S. at 171. Under the strict scrutiny standard, "the Government [must] prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Id*.

### i.  Is Section 7.03(h) Content-Based or Content-Neutral?

Whether the challenged subsections of Section 7.03 are content-based or content-neutral dictates the level of scrutiny to be applied. "Government regulation of speech is content-based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 576 U.S. at 163. "The 'crucial first step' in determining whether a law is content based is to consider whether a regulation of speech on its face draws distinctions based on the message a speaker conveys." *Recycle for Change v. City of Oakland,* 856 F.3d 666, 670 (9th Cir. 2017). In *Reed*, the Supreme Court explained that facial distinctions include those which define regulated speech "by particular subject matter" or "its function or purpose." *Reed*, 576 U.S. at 163. "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Id.* at 166. However, where a restriction "does not, on its face, discriminate on the basis of content," the restriction is usually content-neutral and thus subject to intermediate scrutiny. *Recycle for Change*, 856 F.3d at 670.

8

1    Section 7.03(h) is a content-based regulation. Whether viewed in isolation, or in relation
2    with the rest of Section 7.03, on its face, the regulation distinguishes between religious events and
3    other types of events and singles out several topics or subject matters for differential
4    treatment.  For instance, under Section 7.03(h) a permit is required for plaintiffs to "conduct or
5    sponsor a religious event involving 50 or more persons." However, under Section 7.03(e)–(g), a
6    permit is not required for plaintiffs to put on certain entertainment events, no matter how many
7    people attend *as long as it is spontaneous, and not planned at least four hours in advance*.[1] Under
8    those sections, plaintiffs could go to a public park in San Francisco and put on a drama
9    performance, a fair, circus, juggling show, amusement show, and the like, even if hundreds of
10   people attended, assuming other requirements are met. The same is true if plaintiffs decided that
11   they wanted to give a public speech in a public park on virtually any topic except religion. *See* S.F.
12   Park Code § 7.03(g). The fact that a group of 100 individuals can gather because they are
13   participating in an amusement show without a permit while plaintiffs cannot gather with 100
14   people to express religious content without a permit supports the Court's finding that Section 7.03
15   is content-based.
16   Additionally, enforcement of Section 7.03(h) supports the Court's finding that it is content-
17   based. That an officer must evaluate the content of a message to determine whether a regulation
18   applies is evidence that the regulation is content based, although it is not dispositive. *See Ctr. for*
19   *Bio–Ethical Reform, Inc. v. Los Angeles County Sheriff Dept.,* 533 F.3d 780, 789 n. 5 (9th Cir.
20   2008) ("Whether an officer must read a message is persuasive evidence of an impermissible
21   content-based purpose but is not dispositive."). Here, to determine whether a gathering violates

---

[1] Under certain subsections of Section 7.03, certain non-expressive events do not require a permit so long as those events *were not advertised more than four hours in advance*. This language supports the defendants' argument that what Section 7.03 is really aimed at is trying to ensure that public park spaces are available peoples' use and enjoyment. However, it does not support defendants' argument that Section 7.03 is content-neutral because it treats expressive activities more favorably than non-expressive or social events. (Opp. at 6-7). While Section 7.03 requires a permit for any social event that includes more than 25 people and a permit is only required for any religious event with more than 50 people, there are certain permit exemptions for social/non-expressive events that do not apply to religious events. *See e.g.*, S.F. Park Code § 7.03(e)–(g) (no permit required if event publicized less than four hours before the start of the event). Notwithstanding all of this, the fact remains that Section 7.03, on its face, makes distinctions between religious events and non-expressive events and is thereby content-based.

9

1   Section 7.03, authorities must look to the content of the message communicated to discern the
2   nature of the event.
3         Defendants contend that "Section 7.03 is content neutral because it requires permits based
4   on the type of event, number of people, and conduct involved—not the content of expression."
5   (Dkt. No. 23, Opposition, ("Opp."), at 6). This argument does not persuade. First, laws that
6   distinguish based on the conduct or event involved are still impermissible under the First
7   Amendment if they draw facial distinctions based on a particular subject matter and are not
8   narrowly tailored. *Reed*, 576 U.S. at 163. Second, the very fact that the requirement of a permit is
9   based on the "type of event" and "conduct involved" supports the Court's finding that such
10  regulation is content-based because it draws a distinction between religious events and non-
11  religious events. Lastly, contrary to defendants' assertion, Section 7.03 does not necessarily
12  require permits based on the size of the event. As explained above, many entertainment events that
13  are publicized less than four hours before the start of the event are permissible no matter how big
14  the event is. Defendants completely ignore this aspect of the regulation.
15        Further, that the "city imposes those permit requirements to regulate the competing uses of
16  public space and to preserve parks as locations for all San Franciscans to enjoy, while also
17  providing locations for expressive activities" (Opp. at 6) does not transform the regulation into a
18  content-neutral regulation. "A law that is content based on its face is subject to strict scrutiny
19  regardless of the government's benign motive, content-neutral justification, or lack of 'animus
20  toward the ideas contained' in the regulated speech." *Reed*, 576 U.S. at 166.
21        In sum, Section 7.03 does not regulate all gatherings the same but instead distinguishes at
22  least subsection (h) on expressive conduct.  Therefore the Court finds subsection 7.03(h), which
23  requires a permit for religious events with more than 50 attendees to be content-based, and thus
24  subject to strict scrutiny.

          **ii.**    **Is Section 7.03(m) Content-based or Content-Neutral?**

26        The Court next considers whether the remaining challenged section, Section 7.03(m), is
27  content-based or content-neutral. On its face Sections 7.03(m) is content-neutral. This subsection
28  does not distinguish between the content of the message, but instead applies generally and requires

a permit for any event that uses sound amplification. Thus, this subsection must be narrowly-tailored to advance significant governmental interests to past constitutional muster. *Berger*, 569 F.3d at 1036 (explaining the standard for regulation of speech in public spaces).

### iii. Does Section 7.03(h) Meet Strict Scrutiny?

Having found Section 7.03(h) to impose content-based restrictions on speech, it can only stand if it survives strict security. *Id*. at 171. The defendants conceded at oral argument that that they cannot meet the strict scrutiny test.[2]

### iv. Is Section 7.03(m) Narrowly-Tailored to Advance Significant Governmental Interests?

Because Subsections 7.03(m) is a content-neutral regulation, the Court must now consider whether the regulation: (i) serves a significant governmental interests, (ii) is narrowly-tailored to serve those interests, (iii) does not "delegate overly broad licensing discretion to a government official." *Cuviello v. City of Vallejo*, 944 F.3d 816, 827 (9th Cir. 2019). "A narrowly-tailored requirement need not be the least restrictive means of furthering the [government's] interests, but the restriction may not burden substantially more speech than necessary to further the interests." *U.S. v. Baugh*, 187 F.3d 1037, 1043 (9th Cir. 1999.)  Here, the government argues that the challenged subsection serves the significant governmental interest of reducing noise and other inconveniences to park users and nearby guests.

It is undisputed that the government has a significant interest in regulating public places. Indeed, plaintiffs concede this point. (Mot. at 17) (*citing Forsyth Cty. V. Nationalist Movement*, 505 U.S. 123, 120 (1992) and explaining that "the Supreme Court has recognized the propriety of a government entity in regulating competing uses of public property.") With respect to the government's interest of regulating public places, without the permitting requirements the government is unable to regulate public places effectively and efficiently. This inability to effectively regulate public places is likely to lead to an increase in disorderly conduct and issues around use of competing spaces. Plaintiffs do not argue otherwise.

---

[2] Because the Court finds that plaintiffs are likely to succeed on their facial challenge to Section 7.03(h), the Court need not address plaintiffs challenge as applied to plaintiffs.

1       Plaintiffs also completely ignore defendants' proffered significant interest of reducing noise and inconveniences to park users. *See Ward v. Rock Against Racism*, 491 U.S. 781, 796 ,803 (1989) (holding that the city's sound amplification regulation was narrowly-tailored and explaining that "[t]he city enjoys a substantial interest in ensuring the ability of its citizens to enjoy whatever benefits the city parks have to offer, from amplified music to silent meditation."); *see also Cuviello*, 944 F.3d at 825 ("there are good reasons for regulating sound-amplifying devices . . . these devices can produce noise that is unpleasant and, certainly, "[u]nrestrained use throughout a municipality of all sound amplifying devices would be intolerable.") (internal quotations omitted).

      Rather than confront this language in *Cuviello*, plaintiffs rely on part of the holding in *Cuviello* to argue that any permit requirement for sound amplification in a public park is not narrowly-tailored. Plaintiffs, again, do not persuade. In *Cuviello*, the Ninth Circuit held that a permit requirement was not narrowly-tailored where the requirement extended to "any public street, parkway, thoroughfare, or on privately or publicly owned property, without first obtaining a permit." *Id*. at 822, 828. However, Section 7.03(m) does not sweep as broadly as the regulation did in *Cuviello*. Unlike *Cuviello*, Sections 7.03(m) only applies to sound amplification used in public parks, not entirely throughout the city. Plaintiffs offer to evidence or argument to the contrary.

      Plaintiffs also argue that the permitting requirements of Section 7.03 is not narrowly-tailored because the process of seeking and obtaining a permit is burdensome. Plaintiffs argue that Section 7.03's requirement of insurance coverage of two million dollars, a 250 refundable deposit, and other requirements render the permit scheme burdensome. In support of this argument plaintiffs rely on *Baldwin v. Redwood City*, 540 F.2d 1360, 1371 (9th Cir. 1976). However, plaintiffs' reliance on *Baldwin* is misplaced because Baldwin is distinguishable from the present facts here. In *Baldwin*, the Ninth Circuit struck down a fee charge for each sign that was used as part of a political campaign, holding that the fees imposed would "inhibit the use of this means of communication," and that the fees were "arbitrary in light of the interests such regulations may serve." *Id*. at 1372. Here, the government submitted evidence to demonstrate that the $39 permit fee is used to offset some of the city's administrative costs with respect to processing the permit

12

1 requests; the evidence also shows that the refundable deposit is used to encourage permit holders
2 not to cause damage to the park. (*See* Dkt. No. 25, Declaration ("Decl.") of Shauna Bogetz, ¶ 16).
3 Indeed, nothing about these requirements on their face render them not narrowly-tailored. *See*
4 *Baldwin*, 540 F.2d at 1360 ("in some circumstances a city may both require a permit for activity
5 involving free expression without violating the First Amendment and also collect fees that fairly
6 reflect costs incurred by the city in connection with such activity."); *S. Oregon Barter Fair v.*
7 *Jackson County, Oregon*, 372 F.3d 1128, 1139 (9th Cir. 2004) (holding that governments may
8 "impose a permit fee that is reasonably related to legitimate content-neutral considerations, such as
9 the cost of administering the ordinance, the cost of public services for an event of a particular size,
10 or the cost of special facilities required for the event."). Plaintiffs have not offered any evidence to
11 demonstrate that the permit fee and refundable deposits are unreasonable, arbitrary, or unrelated to
12 the purpose of administering the processing of permits. Nor have plaintiffs have not offered any
13 evidence to demonstrate that the $39 fee requirement or the $250 refundable burden operates as a
14 burden that inhibits the use of San Francisco's public parks as a means of expressing one's First
15 Amendment rights. Indeed, during oral argument plaintiffs conceded that the payment of the $39
16 permit fee is not in fact burdensome to plaintiffs.

17 Moreover, plaintiffs argue that the insurance requirement of Section 7.03 makes the
18 regulation not narrowly-tailored. This argument fails. Section 7.06(d) states that a permit applicant
19 is not "required to comply with the provisions of Subsection (b)(2) pertaining to insurance if the
20 activity proposed is protected by the First Amendment of the U.S. Constitution and the applicant
21 produces evidence that complying with those provisions is impossible or so financially
22 burdensome that it would preclude the applicant from using park property for the proposed
23 activity." S.F. Park Code § 7.06(d). Plaintiffs do not argue that they attempted to apply for this
24 exemption; nor do plaintiffs argue how applying for such exemption would be burdensome, or that
25 they would not qualify for this exemption.

26 In sum, in seeking extraordinary relief, plaintiffs have not met their burden to show that
27 Sections 7.03(m) is not narrowly-tailored, on its face, or as applied to plaintiffs, to serve
28 significant governmental interests. Thus, plaintiffs' request to enjoin this subsection of the

regulation is denied. *Thomas v. Chicago*, 227 F.3d 921, 925 (7th Cir. 2000) *aff'd*, 534 U.S. 316 (2002) (upholding insurance requirement in park for gatherings of 50 or more people).[3]

### b. Liberty of Speech Clause Under the California Constitution

The Court finds that plaintiffs are likely to succeed on the merits of their free speech claims under the California Constitution only with respect to Section 7.03(h). Both the Liberty of Speech Clause and the First Amendment allow governmental entities to promulgate permit systems that place reasonable time, place, and manner restrictions on speech in a public forum. *Cuviello,* 944 F.3d at 827. The standard for evaluating a reasonable time, place, and manner restriction is the same under California and federal law. *See Dulaney v. Mun. Court.*, 112 Cal.3d 77, 84 (1974) (noting that California's standard for evaluating a time, place, and manner restriction in a public forum is "fashioned from a long line of United States Supreme Court cases"); *accord Int'l Soc'y for Krishna Consciousness v. City of Los Angeles*, 48 Cal.4th 446, 106 (2010). Thus, the Court's analysis of plaintiffs' federal constitutional free speech claims applies equally to plaintiffs' claims under the California Constitution. Accordingly, plaintiffs are likely to succeed on their violation of free speech claim with respect to Section 7.03(h) under the California Constitution. *See Supra* section A.1.a. iii. However, plaintiffs are not likely to succeed on the merits with respect to Section 7.03(m). *See Supra* section A.1.a.iv.

---

[3] Plaintiffs' remaining arguments do not change the result. Plaintiffs also argue that the permitting requirements of Section 7.03 fail to leave open ample alternative channels of communication. Not so. Plaintiffs are allowed to worship at several different types of locations throughout the city. Defendants adduced evidence from plaintiffs' own social media accounts showing that plaintiffs continue to meet at several other locations such as beaches, playgrounds, plazas, and indoor spaces. (*See* Dkt. No. 24, Decl. of Tara Steeley, Exs. A-G.) Moreover, given the language of Section 7.03(h), plaintiffs are also allowed to worship at any of San Francisco parks without a park so long as there is 49 or fewer attendees.

Likewise, plaintiffs' argument that Section 7.03 grants overly broad discretion to enforcement officers also does not persuade on this record. The Park Code expressly lists what events/conduct requires a permit and expressly lays out the different basis for denial of such permit. (*See* S.F. Park Code §§7.03, 7.04, and 7.07.) The language in the statute does not give unfettered discretion to park officials when determining whether to grant a request for a permit. Rather, as outlined in Section 7.07, "the General Manager shall approve a permit application unless" certain objective criteria is not met.

### 2. Likelihood of Success on Violation of Freedom to Exercise Religion Claim

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or *prohibiting the free exercise thereof.*" *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993) (emphasis in original). To pass constitutional muster, "[a] law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Id*. at 531. However, a law that is not content-neutral "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Id*. As explained above, Section 7.03(h) fails to satisfy these requirements because it is not content-neutral, and defendants have failed to offer any compelling interest. However, as explained above, with respect to Section 7.03(m), that section is content-neutral and is justified by significant governmental interests.

Accordingly, plaintiffs have only made a showing of likelihood of success as to their violation of freedom to exercise religion claim with respect to Section 7.03(h). The showing with respect to the other challenged subsection fails.

### 3. Likelihood of Success of Violation of Due Process Claim

Plaintiffs argue that Section 7.03 is unconstitutionally vague with respect to the phrase "musical performance" in subsection (i) and "other structure" in subsection (t). These arguments fail in light of plaintiffs' later concession that they did not seek to enjoin these subsections.

### 4. Likelihood of Success of Violation of Equal Protection Claim

Plaintiffs argue that Section 7.03 violate their rights under the Equal Protection Clause of the Fourteenth Amendment. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quotations omitted).

Here, the Court finds that plaintiffs have not shown a likelihood of success on the merits of their Equal Protection claims because they have not carried their burden of identifying those that are similarly situated to plaintiffs. Plaintiffs argue in a conclusory fashion that Section 7.03

"violates equal protection in various ways, targeting select activities for needing a permit while allowing similar activities to continue without requiring one." (Mot. at 22.) However, plaintiffs have not identified what activities they believe are "similarly situated" to their activities. Without more, plaintiffs are not likely to succeed on their equal protection claims.

### B. Whether Plaintiffs Will Suffer Irreparable Harm

The Court next considers whether plaintiffs are likely to suffer irreparable harm if an injunction does not issue prior to a trial on the merits. *Winters*, 555 U.S. at 20. The loss or threatened infringement upon free speech rights "for even minimal periods of time[ ] unquestionably constitutes irreparable injury." *Cuviello*, 944 F.3 at 832 (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976)). In constitutional cases where First Amendment rights are being violated, the Ninth Circuit has held that such cases do not require as strong showing of irreparable harm. *Cuviello*, 944 F.3d at 833; *see Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) ("A colorable First Amendment claim is irreparable injury sufficient to merit the grant of relief.") (internal quotation marks omitted).

Here, plaintiffs have shown a likelihood of success with respect to some of their First Amendment claims based on Section 7.03(h). Moreover, plaintiffs have received citations at various park locations when they tried to worship. Plaintiffs also allege that certain aspects of Section 7.03's permitting process is burdensome and expensive. (Compl. ¶ 157.) Because of this, plaintiffs allege that they have been chilled and deterred from engaging in church in San Francisco's public parks out of fear and of criminal sanctions. (*Id.* ¶ 173.)

Defendants argue that plaintiffs' delay in seeking a preliminary injunction belies their claim of irreparable harm. While the Court notes that plaintiffs were first cited for violation of Section 7.03 in January 2021, plaintiffs' delay in seeking a preliminary injunction is "but a single factor to consider in evaluating irreparable injury"; indeed, "courts are loath to withhold relief *solely on that ground.*" *Cuviello*, 944 F.3d at 833 (emphasis in original). In *Cuviello*, a First Amendment case, the Ninth Circuit explained that while a plaintiff's "failure to seek speedy relief can imply the lack of a need for such relief, 'such tardiness is not particularly probative in the context on ongoing, worsening injuries.' " *Id*. Each instance in which plaintiffs refrain from

16

worshipping in San Francisco parks, or face the threat of citation, contribute to their ongoing constitutional injuries. *Id*. (finding plaintiffs refrain from first amendment rights a continuing and worsening injury).

Accordingly, plaintiffs have demonstrated that they will continue to face irreparable injury absent an injunction with respect to their First Amendment claims under Section 7.03(h). However, with respect to plaintiffs' claims under Section 7.03(m), the Court finds that plaintiffs fail to demonstrate irreparable harm under this Section given the delay in seeking an injunction and the alternative means available for worship.

### C.     Whether the Equities and Public Interest Favor Defendants

The Court finds that the remaining two factors, the balance of hardships and the public interest, both weigh in favor of granting the injunction. The fact that plaintiffs have raised "serious First Amendment questions compels a finding that . . . the balance of hardships tips sharply in [the plaintiffs'] favor. " *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (internal quotation marks omitted). Further, the Ninth Circuit has "consistently recognized the significant public interest in upholding First Amendment principles." *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014). Indeed, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotation marks omitted).

### IV.    CONCLUSION

In summary, plaintiffs have met each of the requirements for a preliminary injunction with respect to Section 7.03(h). Accordingly, the Court **GRANTS** plaintiffs' motion for a preliminary injunction and hereby enjoins defendants from enforcing Section 7.03(h). However, plaintiffs have not carried their burden to warrant enjoinment of any other subsection. Thus, the Court **DENIES** plaintiffs' motion with respect to the other challenged subsection, 7.03(m).

Defendants shall file a response to plaintiffs' complaint within fourteen (14) days of this Order.

The Court **SETS** a case management conference for **MONDAY, JULY 25, 2022 AT 2:00 PM**.

17

This Order terminates Docket Number 13.

**IT IS SO ORDERED.**

Dated: June 22, 2022

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE